CV 15      1230

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
NEIL SOOROOJBALLIE,                                    Civ No.

                        Plaintiff,

      -against-

PORT AUTHORITY OF NEW YORK AND NEW          COMPLAINT
JERSEY and GARY FRATTALI, *Individually*,

                       Defendants.
-----------------------------------------------------------------X

      Plaintiff, NEIL SOOROOJBALLIE, (hereinafter "Plaintiff SOOROOJBALLIE"), by his attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff SOOROOJBALLIE complains pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000-e *et. seq.* ("Title VII") and 42 U.S.C. Section 1981 seeking to redress the injuries Plaintiff has suffered as a result of being unlawfully discriminated against by Defendants because of his race (Black) and national origin (West Indian), and retaliated against for complaining about such discrimination.

## JURISDICTION

2. Jurisdiction of this action is conferred upon the court as this action involves a Federal Question under 42 U.S.C. Section 1981.

3. The Court also has jurisdiction pursuant to 28 U.S.C. §1331, §1343, and supplemental jurisdiction pursuant to §1367.

4. Venue is proper in this district based upon the fact that a substantial part of the events giving rise to the claim occurred within the Eastern District of New York. 28 U.S.C.

§1391(b).

## PROCEDURAL PREREQUISITES

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC on December 19, 2014, dated December 16, 2014, with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto.

7. This Action is being commenced within 90 days of receipt of said Right to Sue.

## PARTIES

8. Plaintiff SOOROOJBALLIE is a resident of the State of New York, County of Nassau.

9. At all times material, Defendant PORT AUTHORITY OF NEW YORK AND NEW JERSEY (hereinafter "PORT AUTHOIRTY") was and is a bi-state port district that runs through the regional transportation infrastructure within the Port of New York and New Jersey, with a corporate headquarters located at 225 Park Ave. South New York, NY 10003.

10. That at all times relevant hereto, Defendant PORT AUTHORITY possessed a site/field at LaGuardia Airport located at 94-00 Ditmars Blvd. Queens, NY 11369, wherein the majority of the discriminatory conduct took place against Plaintiff SOOROOJBALLIE.

11. Upon and information and belief, at all times material, Defendant FRATTALI was and is a resident of the State of New York.

12. At all times material, Defendant FRATTALI was an employee of Defendant PORT AUTHORITY, holding the position of Chief Maintenance Supervisor.

13. At all times material, Defendant FRATTALI was Plaintiff SOOROOJBALLIE's supervisor and/or held supervisory authority over Plaintiff SOOROOJBALLIE. Defendant FRATTALI had the authority to hire, fire or affect the terms and conditions of Plaintiff's employment.

14. Plaintiff SOOROOJBALLIE is a Black Guyanese male.

15. Upon information and belief, Defendant FRATTALI is Caucasian.

16. At all times material, Defendant PORT AUTHORITY and Defendant FRATTALI are jointly referred to as "Defendants."

## STATEMENT OF MATERIAL FACTS

17. Plaintiff SOOROOJBALLIE commenced his employment with Defendant PORT AUTHORITY on January 10, 2011 at the LaGuardia location, as a "Utility System Maintainer," earning approximately $32 per hour.

18. Throughout his employment with Defendant PORT AUTHORITY, Plaintiff SOOROOJBALLIE was an exemplary employee who only received compliments and positive feedback regarding his strong work ethic and performance. Furthermore, the Plaintiff was elected by his union, Local Union 30, to be the shop steward of his facility on December 14, 2013.

19. However, in or around June 2013, Defendants began subjecting Plaintiff SOOROOJBALLIE to discrimination based on his race and national origin.

20. For example, Plaintiff SOOROOJBALLIE sought to apply for a promotional position as a "Junior Supervisor." Plaintiff SOOROOJBALLIE met all of the requirements for the position.

3

21. In order to apply, Plaintiff SOOROOJBALLIE needed Defendant FRATTALI to complete a Junior Supervisory Assessment Evaluation. Thus, Plaintiff SOOROOJBALLIE presented Defendant FRATTALI with the evaluation form to complete his application. Defendant FRATTALI responded by tearing the form to pieces and throwing it in the garbage.

22. Plaintiff SOOROOJBALLIE approached Mike Ward, his Maintenance Unit Supervisor, on three (3) separate occasions to inquire as to why Defendant FRATTALI was not completing Plaintiff's evaluation. However, Mr. Ward failed to take any action.

23. Plaintiff SOOROOJBALLIE again approached Defendant FRATTALI in or around August 2013 requesting a completed evaluation form. In response, Defendant FRATTALI proffered numerous excuses as to why he would not complete Plaintiff SOOROOJBALLIE's evaluation form.

24. In addition, Defendant FRATTALI made the following discriminatory comment to Plaintiff SOOROOJBALLIE: **"What is it with you type of people [referring to Plaintiff's national origin]? I have two more like you driving me crazy and now I have to deal with you now!"**

25. Defendant FRATTALI completed a perfect Junior Supervisory Assessment Evaluation for Sal Funaro. However, upon information and belief, Mr. Funaro did not meet the requirements of the job as he had not been employed by Defendants for the requisite three years and he did not have the correct license.

26. Upon information and belief, the Defendants have engaged in a pattern and practice of discriminating against minorities and non-whites.

4

27. Defendant PORT AUTHORITY often gave its employees $25 for dinner. However, Defendant FRATTALI refused to approve Plaintiff SOOROOJBALLIE's meal expenses in full. Upon information and belief, Doug Oggeri and Murphy Michael, two Caucasian employees of Defendant PORT AUTHORITY, have always been fully reimbursed for their meal expenses by Defendant FRATTALI.

28. In or around August 16 2013, Plaintiff SOOROOJBALLIE applied for the Watch Engineer position through Defendant PORT AUTHORITY.

29. Once again, Plaintiff SOOROOJBALLIE met all of the pre-requisites and qualifications and solely needed to pass the practical in order to receive this position.

30. Defendant FRATTALI was one of the proctors for Defendant PORT AUTHORITY at the training center where the practical was scheduled to take place. Upon information and belief, Defendant FRATTALI relayed to numerous employees of Defendant PORT AUTHORITY that he would do everything in his power to ensure that Plaintiff SOOROOJBALLIE did not pass the practical on November 14, 2013.

31. Upon information and belief, Defendant FRATTALI prepared another Caucasian applicant for the practical by showing him the equipment beforehand. Defendant FRATTALI did not train or prepare Plaintiff SOOROOJBALLIE.

32. Nonetheless, Plaintiff SOOROOJBALLIE passed the above practical. In fact, Plaintiff SOOROOJBALLIE scored the second highest.

33. Upon information and belief, when Defendant FRATTALI found out that Plaintiff SOOROOJBALLIE passed the practical, he mentioned to a fellow employee of Defendant PORT AUTHORITY that he would do everything in his power to ensure that Plaintiff SOOROOJBALLIE did not secure the Watch Engineer position.

34. Defendant FRATTALI also told Plaintiff SOOROOJBALLIE that he was trying to elevate himself too quickly within the ranks at Defendant PORT AUTHORITY. Plaintiff understood Defendant's comment to imply that people of his ethnicity, Black/West Indian, should not seek higher positions within the organization.

35. Nevertheless, Defendant PORT AUTHORITY's Human Resources offered Plaintiff the Watch Engineer Position.

36. However, upon learning this information, Defendant FRATTALI told Plaintiff, "You're not going to get the position, I will tell HR." Defendant FRATTALI subsequently convinced Defendants to withdraw their offer to Plaintiff SOOROOJBALLIE.

37. Upon information and belief, Defendant FRATTALI sought to impede Plaintiff's professional development, so as to prevent Plaintiff from transferring out Defendant's supervision.

38. As a result of Defendant FRATTALI's discriminatory conduct, on or about January 21, 2014, Plaintiff SOOROOJBALLIE met with Dimitris Bournias, Manager of Airport Maintenance, to file a complaint of discrimination against Defendant FRATTALI.

39. **In response to Plaintiff SOOROOJBALLIE's complaint, Mr. Bournias stated that the Plaintiff was blowing things out of proportion and that he did not want to hear about the allegations that Plaintiff SOOROOJBALLIE was bringing forth against Defendant FRATTALI.**

40. At this point, it became clear to Plaintiff SOOROOJBALLIE that the Defendants were acquiescing to Defendant FRATTALI's discriminatory practices; thus, Plaintiff SOOROOJBALLIE filed a formal complaint with the Defendants' Equal Employment Opportunity office on January 28, 2014.

41. As a result of Plaintiff's complaint, Defendant FRATTALI began to retaliate against Plaintiff SOOROOJBALLIE.

42. Specifically, Defendant FRATTALI issued numerous write-ups to Plaintiff. Prior to Plaintiff SOOROOJBALLIE's formal complaint, he had never been issued any write-ups or received any disciplinary action.

43. On January 9, 2014 around 3:30 PM, Plaintiff SOOROOJBALLIE responded to a water flow issue that occurred at the fire pump station located at LaGuardia Airport. While Plaintiff SOOROOJBALLIE was addressing the issue at this work site, Defendant FRATTALI approached Plaintiff and stated the following: **"You Fucking Indian Asshole!!! You are supposed to shut the pumps off and you didn't listen!! Are you stupid?!! That's why you and your people are the way they are."**

44. Following the above incident, Plaintiff SOOROOJBALLIE asked Defendant FRATTALI to never speak to Plaintiff in such a discriminatory and offensive manner ever again. Mr. Ward was also present during this conversation and failed to respond.

45. Following the above incident, it became more apparent to Plaintiff SOOROOJBALLIE that Defendant FRATTALI and Mr. Ward were conspiring with one another to retaliate against Plaintiff. Specifically, Defendant FRATTALI used Mr. Ward to retaliate against Plaintiff by falsifying incidents that were later memorialized in write-ups against the Plaintiff.

46. For example, on February 4, 2014, Mr. Ward called Plaintiff and Defendant FRATTALI into his office. During this meeting, Defendant FRATTALI fabricated two incidents involving Plaintiff.

47. The first was an alleged incident that took place on December 12, 2013 where Defendant FRATTALI falsely accused Plaintiff of verbally abusing Mr. Ward.

48. The second alleged incident occurred on January 9, 2014 where it was alleged that the Plaintiff did not follow protocol shutting down fire pumps.

49. Defendant FRATTALI further alleged that the Plaintiff did not get along with his co-workers; an allegation that was false and unfounded.

50. Plaintiff SOOROOJBALLIE also received a write up involving an incident that occurred on or around February 4, 2014 involving the freeze protection building boiler. Notably, Eric Francis accepted all responsibility for the shortcoming associated with this incident. Nonetheless, as an additional act of retaliation, Mr. Ward and Defendant FRATTALI wrote Plaintiff SOOROOJBALLIE up for the incident. Plaintiff SOOROOJBALLIE denied the accusations, furnished rebuttals to same, and refused to sign the write-ups because of the false contents contained therein.

51. Defendant FRATTALI also continued to discriminate against Plaintiff SOOROOJBALLIE. For instance, he made the following comments to Plaintiff: **"You Indians want to be Americans;" "I hope you know that you are not white" and "You should go back to your country where you belong."**

52. In spite of the above discriminatory and retaliatory conduct, Plaintiff SOOROOJBALLIE approached Defendant FRATTALI in an attempt to smooth things over. Plaintiff SOOROOJBALLIE also expressed to Defendant FRATTALI his concerns that he would lose his job as a result of the retaliation he had been experiencing at Defendant PORT AUTHORITY.

53. Defendant FRATTALI replied: "It's leading down that road." Defendant FRATTALI again stated that he would not stand for Plaintiff SOOROOJBALLIE being hired as the Watch Engineer at Defendant PORT AUTHORITY's facility.

54. Defendant FRATTALI continued to do everything within his power to thwart Plaintiff SOOROOJBALLIE's success and growth within Defendant PORT AUTHORITY.

55. For example, in or around early April 2014, Human Resources again offered Plaintiff SOOROOJBALLIE the Watch Engineer position pending the results of various medical tests.

56. On the same day, Plaintiff SOOROOJBALLIE received a call from Kevin Cruse, the Local 30 Representative, wherein he stated that Defendant FRATTALI expressed his concerns regarding Plaintiff's alleged poor work performance in December 2013 that related to the fire pump station write-up.

57. In response, Plaintiff SOOROOJBALLIE relayed to Mr. Cruse his fears and concerns regarding how Defendant FRATTALI would continue to harass and subject him to discrimination. Mr. Cruse assured him that the union was working on his case.

58. Plaintiff SOOROOJBALLIE then approached Defendant FRATTALI and asked him what it would take to make Defendant FRATTALI stop retaliating against Plaintiff. Defendant FRATTALI responded that the retaliation would stop if Plaintiff did not accept the Watch Engineer position. Plaintiff asked Defendant FRATTALI if he could get that guarantee in writing. However, Defendant FRATTALI refused.

59. Believing he had no other choice to end the retaliation, Plaintiff chose not to accept the position.

60. In an effort to seek resolution and closure from Defendants' discriminatory conduct, Plaintiff SOOROOJBALLIE contacted Wayne Turner, a representative of Defendant PORT AUTHORITY's EEOC unit, to inquire about the status of the formal complaint he internally filed on January 21, 2014.

61. Mr. Turner continued to provide excuses for Defendant PORT AUTHORITY's failure to address Plaintiff's complaints. Finally, subsequent to numerous telephone calls, Mr. Turner informed Plaintiff SOOROOJBALLIE that he did not possess a valid case, but that his union would be better suited to handle his matter. Upon information and belief, Mr. Turner failed to advance Plaintiff SOOROOJBALLIE's case and only prolonged the process.

62. In or around late July 2014, Defendants' HR Department emailed Plaintiff offering him the Watch Engineer position at Laguardia Airport. As Watch Engineer, Plaintiff SOOROOJBALLIE would still be under the supervision of Defendant FRATTALI.

63. On or about July 29, 2014, Plaintiff SOOROOJBALLIE responded to Vincent Piccinich from HR that he was forced to decline the Watch Engineer position because Defendant FRATTALI had previously threatened Plaintiff that if he took the position, Defendant FRATTALI would continue to write Plaintiff up until Plaintiff was ultimately terminated. Plaintiff SOOROOJBALLIE further explained that Defendant FRATTALI had promised to stop writing Plaintiff up if Plaintiff agreed to not accept the Watch Engineer position.

64. Plaintiff SOOROOJBALLIE concluded by telling Mr. Piccinich that although Plaintiff's goal had always been to become a Watch Engineer, Plaintiff had to decline the opportunity in order to stop the discrimination against him.

65. On or about August 15, 2014, Defendants again presented Plaintiff with the Watch Engineer position.

66. However, on August 19, 2014, Plaintiff again responded that he would not be accepting the Watch Engineer position because he feared Defendant FRATTALI would retaliate against him if he took the position, as Defendant had done before.

67. On or about October 17, 2014, two Port Authority Inspector Generals showed up at the home of Plaintiff SOOROOJBALLIE to question Plaintiff about the equipment at Defendants' facility and whether Plaintiff knew of anyone who would try to do damage to the equipment. The two men went on to accuse Plaintiff SOOROOJBALLIE of cutting the wires of one of the Port Authority machines.

68. Then, one of Plaintiff's supervisors appeared at Plaintiff's home, asked Plaintiff for his airport badge and keys, and handed him a memorandum that suspended Plaintiff "until review [was] concluded" regarding two incidents.

69. Defendants accused Plaintiff of wrongdoing and suspended him in an effort to further subject Plaintiff to a hostile work environment.

70. On or about October 20, 2014, Plaintiff SOOROOJBALLIE resigned from his position with Defendants, stating that he felt he had no choice but to leave due to the hostile work environment and retaliation to which Defendants had constantly been subjecting him, culminating in Plaintiff's suspension a few days prior.

71. Defendants conduct was egregious and effected Plaintiff's terms and conditions of employment to such an extent that a reasonable person would have been left with no other choice but to resign.

72. The above acts are only an example of the acts and the pervasive hostile work environment to which Plaintiff was exposed on a regular basis by Defendants.

73. Defendants failed to act in response to Plaintiff's complaints of discrimination and retaliation by Defendant FRATTALI, thereby acquiescing in Defendant FRATTALI's misconduct.

74. Plaintiff has been unlawfully discriminated against, humiliated, degraded, victimized and embarrassed; as a result, suffers from anxiety, emotional distress and depression due to the above discriminatory conduct.

75. Plaintiff was discriminated against and subjected to a hostile work environment during the course of his employment with Defendants because of his race and national origin.

76. Plaintiff was unlawfully retaliated against because he engaged in a protected activity by opposing and objecting to the implementation of the aforementioned policies and practices of Defendants to his superiors.

77. Based upon the above, Plaintiff SOOROOJBALLIE was subjected to a hostile work environment during his tenure with Defendant PORT AUTHORITY.

78. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

79. As a result of the Defendants' discriminatory and intolerable treatment of Plaintiff, suffered severe emotional distress, physical ailments, significant monetary loss and physical injuries.

80. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, promotion, the loss of a salary, bonuses, benefits and other compensation which directly stem from his employment with Defendant PORT AUTHORITY. Plaintiff has also suffered future pecuniary losses, emotional pain,

suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

81. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

82. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## AS AGAINST DEFENDANT PORT AUTHORITY ONLY

83. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

84. 42 USC 2000e-2(a), states in relevant part: "It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...."

85. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by discriminating against Plaintiff because of his race and/or national origin.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## AS AGAINST DEFENDANT PORT AUTHORITY ONLY

86. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

87. 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

88. By retaliating against Plaintiff for his opposition to their illegal conduct, Defendants violated 42 U.S.C. §2000e-3(a).

**AS A THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER 42 U.S.C. Section 1981**

89. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

90. 42 USC Section 1981 states in relevant part as follows:

    (a) Statement of equal rights

    All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

    (b) "Make and enforce contracts" defined

    For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

    42 U.S.C.A. § 1981

91. Defendants violated the above section as set forth herein.

**AS A FOURTH CAUSE OF ACTION**
**FOR RETALIATION UNDER 42 U.S.C. §1981**

92. Plaintiff repeat and reallege each and every paragraph above as if said paragraph was more fully set forth herein at length.

93. By the acts and practices described above, Defendants retaliated against Plaintiff for his opposition to unlawful discrimination under 42 U.S.C. §1981.

94. Defendants acted with malice and/or reckless indifference to Plaintiff' statutorily protected rights.

95. As a result of Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damage unless and until this Court grants relief.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

WHEREFORE, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practice prohibited by Title VII of the Civil Rights Act and 42 U.S.C. Section 1981, and that the Defendants discriminated against Plaintiff because of his race and/or national origin and retaliated against him for complaining of such discrimination;

B. Awarding damages to Plaintiff resulting from Defendants' unlawful employment practices and conduct, and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in an amount in excess of the jurisdiction of all lower courts;

D.     Awarding Plaintiff punitive damages;

E.     Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action; and

F.     Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants unlawful employment practices.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: New York, New York
       March 6, 2015

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

By: _____
Nicole Welch
Marjorie Mesidor
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
(212) 248-7431
nwelch@tpglaws.com
mmesidor@tpglaws.com

RECEIVED DEC 19 2014 BY: AEN

**U.S. Department of Justice**
**Civil Rights Division**
NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL
2014 2916

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

December 16, 2014

Mr. Neil Sooroojballie
c/o Nicole Welch, Esquire
Law Offices of Phillips & Assocs.
45 Broadway
Suite 620
New York, NY 10006

Re: EEOC Charge Against Port Authority of New York & New Jersey
No. 520201402884

Dear Mr. Sooroojballie:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC New York District Office, New York, NY.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Vanita Gupta
Acting Assistant Attorney General
Civil Rights Division

by Karen J. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: New York District Office, EEOC
Port Authority of New York & New Jersey