UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
: 
NEIL SOOROOJBALLIE, :
:
Plaintiff, :
: **REPORT AND**
-against- : **RECOMMENDATION**
: 1:15-cv-01230 (WFK)(PK)
PORT AUTHORITY OF NEW YORK AND NEW :
JERSEY, and GARY FRATTALI, :
:
Defendants. :
:
------------------------------------------------------------------- X

**Peggy Kuo, United States Magistrate Judge:**

On referral from the Honorable William F. Kuntz, II is the question of the reasonableness of an award of attorneys' fees after a jury trial. (Dkt. 106.). As set forth below, after careful consideration of the filings by all parties, the undersigned respectfully recommends that Plaintiff be awarded attorneys' fees in the amount of $149,289.78.

## PROCEDURAL HISTORY

On March 10, 2015, Neil Sooroojballie ("Plaintiff") brought this action against his former employer the Port Authority of New York and New Jersey, and supervisor Gary Frattali (together "Defendants"), alleging that Defendants discriminated against him on the basis of his race and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1981. (Dkt. 1, Complaint ¶¶ 1, 13, 17.) On September 17, 2018, a jury found in Plaintiff's favor on his claims under Title VII and § 1981, awarding compensatory and punitive damages. (Dkt. 79.)

On January 4, 2019, Plaintiff filed a Motion for Reasonable Attorneys' Fees and Costs (the "Motion") (Dkt. 95.) Plaintiff argued that as the prevailing party in a proceeding under Title VII, he is entitled to reasonable attorneys' fees and costs under 42 U.S.C. § 2000e-5(k). (Dkt. 95-1 at 1.)

1

Plaintiff sought $177,882.70 (*id.*), which included $8,301.95 in costs. (*Id.* at 7.) Judge Kuntz granted the Motion by docket order on January 17, 2019. On January 24, 2019, Defendants filed a Motion for a Modification of the Award of Attorneys Fees and For a Stay of the Order (*See* Dkts. 101, 102), supported by a Memorandum of Law (Dkt. 103, "Opposition Memorandum"). Defendants' motion was denied the same day. (Jan. 24, 2019 Dkt. Order.)

Defendants appealed, *inter alia*, the Court's grant of the Motion. On June 4, 2020, the Second Circuit vacated the attorneys' fee award and "remand[ed] the issue to the district court to allow it to fully consider defendants' opposition and to provide the grounds for its discretionary decision in connection with the fees motion." (Dkt. 105 at 23.)

On June 9, 2020, Judge Kuntz referred "the question of the reasonableness of the award of attorneys' fees to Plaintiff" to the undersigned, with instructions to "fully consider defendants' opposition and provide the grounds for the fee to be approved." (Dkt. 106 ¶ 4 (quotation, citation, and alteration omitted).)

On July 21, 2020, Plaintiff filed a Reply in Support of the Motion for Attorneys' Fees (Dkt. 112-9, "Reply Memorandum").

## LEGAL STANDARD

Section 2000e-5(k) of Title 42 states:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs . . . .

Under § 2000e-5(k), reasonable attorneys' fees are calculated using the "lodestar" method. *Pinner v. Budget Mortg. Bankers, Ltd.*, 336 F. Supp. 2d 217, 219 (E.D.N.Y. 2004). "Under this method, the Court makes an initial calculation of a lodestar amount by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate." *Id.* (citations omitted). "The fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs."

*Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020).

Ultimately, "[t]he district court retains discretion to determine what constitutes a reasonable fee." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quotation, citation, and alteration omitted).

## THE PARTIES' POSITIONS

In the Opposition Memorandum, Defendants argued that Plaintiff's requested fees were excessive in that the billing rates for the associates and paralegals who worked on this action are too high, that "a percentage reduction is warranted for the claims dismissed on the motion for summary judgment since they are distinct from the hostile work environment claims," and that "the attorney fee application included hours on the motion for summary judgment on which plaintiff was largely unsuccessful and includes duplicative and meaningless activities." (Dkt. 103 at 1.) In addition, they argued that Plaintiff's counsel should have halved their billing rate for travel time. (*See id.* at 2-7; Dkt. 95 at 3.)

In the Reply Memorandum, Plaintiff argued that the fees were reasonable, and increased the amount of fees sought to $182,922.70 to account for the "time spent recovering fees." (Dkt. 112-9 at 9.)

## DISCUSSION

### I. Reasonableness of Hourly Rates

Courts use "the forum rule" to determine whether an hourly rate is reasonable. *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). "According to the forum rule, courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Id.* (quotations and citation omitted). The burden is on the fee applicant to establish the reasonableness of the hourly rate sought. *See Monge v. Glen Cove Mansion Hosp., LLC*, No. 18-CV-7229 (SJF)(SIL), 2020 WL 1666460, at *5 (E.D.N.Y. Apr. 2, 2020).

3

### A.  *Reasonableness of the Attorneys' Hourly Rates*

"The prevailing rates for attorneys in the E.D.N.Y. are approximately $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates." *Id.* (quotation, citations, and alterations omitted); *see also LG Cap. Funding, LLC v. 5Barz Int'l, Inc.*, No. 16-CV-2752 (KAM)(JO), 2019 WL 3082478, at *2 (E.D.N.Y. July 15, 2019).[1]

Seven attorneys worked on this action on behalf of Plaintiff: (1) Marjorie Mesidor, a partner at Phillips & Associates, who bills at $450 per hour (Dkt. 95-2 ¶¶ 2, 5); (2) Brittany A. Stevens, an associate at Phillips & Associates, who bills at $300 per hour (*id.* ¶¶ 6, 8); (3) Dorina Cela, an associate at Phillips & Associates, who bills at $325 per hour (*id.* ¶¶ 9, 13); (4) Yusha D. Hiraman, who bills at $300 per hour[2] (*id.* ¶ 17); (5) Joan Badere Lopez, an associate at Phillips & Associates, who bills at $250 per hour (*id.* ¶¶ 18-19); (6) Nicole Ann Welch, who bills at $300 per hour (*id.* ¶ 20); and (7) Stephen Bergstein, a partner at Bergstein & Ullrich, LLP., who bills at $450 per hour (Dkt. 95-6 ¶¶ 2-3).

Defendants argue that the billing rates for associates Stevens, Cela, Hiraman, Lopez, and Welch should be reduced to $200, $200, $100, $100, and $100, respectively. (Dkt. 103 at 4-5.)

1. *Stevens*

Plaintiff proposes an hourly rate of $300 per hour for Stevens. (Dkt. 95-2 ¶ 8.) Defendants argue that this rate should be reduced to $200 per hour. (Dkt. 103 at 4.)

The Declaration of Marjorie Mesidor in Support of the Motion for Reasonable Attorneys'

---

[1] Defendants agree that these are the prevailing rates in this district. (Dkt. 103 at 2-3.) Plaintiff states that the prevailing rates for associates are "'$100 to $325 for associates in civil rights cases.," (Dkt. 95 at 5 (quoting *Thomas v. City of New York*, No. 14-CV-7513 (ENV)(VMS), 2017 WL 6033532, at *4 (E.D.N.Y. Dec. 1, 2017))), but also cites *Crews v. County of Nassau*, No. 6-CV-2610 (JFB)(ORB), 2019 6894469 (E.D.N.Y. Dec. 18, 2019), which holds that $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates are appropriate rates in this district.

[2] Plaintiff does not state that Hiraman works at Phillips & Associates. The undersigned trusts that any disbursements for fees will be allocated to the appropriate firm.

4

Fees and Costs (Dkt. 95-2, "Mesidor Declaration") states that Stevens graduated from the University of San Francisco School of Law in 2014 and began working at Phillips & Associates in early 2015. (*Id.* ¶ 8.) Although the Mesidor Declaration states that Stevens is admitted in New York, it does not say when she was admitted to the bar. (*Id.*) Stevens has been "recognized as a 'Rising Star' by New York Super Lawyers for her contributions in employment discrimination" and "as a 2018 'Best Attorney' by the Best Attorneys of America Association and by the American Institute of Legal Counsel." (*Id.* ¶ 7.) She was added as a member of the "Million Dollar Advocates Forum" and the American Institute of Legal Counsel's "Top Verdicts and Settlements." (*Id.*) Stevens is described as having "considerable experience" in "employment discrimination matters," (*id.* ¶ 6), and, in the Reply Memorandum, Plaintiff states that "the EDNY docket shows that Stevens has been counsel in 39 cases, and the [SDNY] docket shows that Stevens has been counsel in 84 cases." (Dkt. 112-9 at 2; *see also* Dkt. 112-1.)

Defendants contend that Stevens's hourly rate should be reduced to $200 per hour because "[i]t is unknown if she had any other employment [experience] prior to joining [Phillips & Associates] in 2015," "[s]he is either a third or fourth year associate," and she has "[n]o specific experience in civil rights litigation." (Dkt. 103 at 4.)

At the time of the Motion, Stevens was, at most, a fifth-year associate. Although Plaintiff contends that Stevens was "counsel" in 123 cases, approximately 23% of them were filed after January 4, 2019. (*See* Dkt. 112-1.) The cases filed after this date do not factor into the consideration of Stevens's experience for this Motion.[3] Further, Plaintiff does not describe the nature of Stevens's work in any of these cases.[4]

---

[3] As set forth below, Plaintiff cites many cases filed after the Motion in support of the fees requested for each attorney. The undersigned does not consider any of this experience in determining each attorney's reasonable hourly rate.

[4] Plaintiff references the number of cases listed on the EDNY and SDNY docket sheets for each of the

5

Recent cases in this district have awarded between $250 and $275 for associates who have been practicing for a similar number of years. *See, e.g.*, *Cap. One, N.A. v. Auto Gallery Motors, LLC*, No. 16-CV-6534 (PKC)(SIL), 2020 WL 423422, at *4 (E.D.N.Y. Jan. 27, 2020) (awarding "$275 for associates with more than five years of experience"); *Off. Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, No. 13-CV-5475 (JS)(AKT), 2018 WL 7291396, at *9 (E.D.N.Y. Aug. 24, 2018), *R&R adopted in relevant part* (Sept. 27, 2018 Dkt. Order) (finding "that $250 per hour is an appropriate and reasonable rate" for "an associate with six or fewer years of experience"); *see also Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS)(AKT), 2020 WL 2771008, at *11 (E.D.N.Y. May 4, 2020), *R&R adopted*, 2020 WL 2769266 (E.D.N.Y. May 28, 2020) (reducing the hourly rate of a sixth-year associate from $225 to $200).

Accordingly, the undersigned recommends that Stevens's rate be reduced to $250 per hour.

### 2. Cela

Plaintiff seeks reimbursement for Cela's time at the rate of $325 per hour (Dkt. 95-2 ¶ 13), while Defendants maintain that it should be reduced to $200 (Dkt. 103 at 4).

Cela obtained a law degree from Thomas Jefferson School of Law in San Diego and was admitted to practice in New York in 2011. (Dkt. 95-2 ¶ 9.) At school, she "earned awards for her study of international human rights law and pro bono legal services," "advocated for the rights of indigent clients," and was a member of her law school's "Alternate Dispute Resolution team." (*Id.* ¶¶ 9-11.) She "has worked on a variety of cases, including immigration, securities, bankruptcy, and breach of contract matters." (*Id.* ¶ 12.) In the Reply Memorandum, Plaintiff states that "the EDNY docket sheet shows that Cela has been counsel in 39 cases," and that the SDNY docket sheet shows "[s]he has been counsel in 53 cases." (Dkt. 112-9 at 3; *see also* Dkt. 112-2.) In addition, "[t]he Westlaw

---

attorneys whose billing rates Defendants challenge. Plaintiff does not describe the nature of the attorneys' responsibilities in any of those cases.

6

database credits Cela with 27 cases since 2015, all of them employment cases with Phillips & Associates." (Dkt. 112-9 at 3.)

At the time of the Motion, Cela was an eighth-year associate. The two docket sheets attached as Exhibit 2 to the Supplemental Affirmation of Stephen Bergstein in Support of the Motion for Reasonable Attorneys' Fees and Costs (Dkt. 112) show that Cela was counsel in 92 cases. As for the 27 employment cases that Plaintiff states are in the Westlaw database, Plaintiff failed to submit any evidence, including an attorney affidavit, to support this assertion. Without this support, the undersigned does not know whether these 27 cases are mutually exclusive of the 92 cases displayed on the docket sheets. Accordingly, the undersigned will not consider the Westlaw database cases in assessing Cela's reasonable hourly rate.[5] *See Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 298 (E.D.NY. 2012) ("The attorney should establish his hourly rate with satisfactory evidence—in addition to the attorney's own affidavits." (quotations and citation omitted)).

Defendants contend that Cela's "lack of any experience in civil rights litigation mandates" a reduction of her hourly rate to $200. (Dkt. 103 at 4.) However, they do not explain why the skills Cela obtained in other cases over the course of her eight-year legal career were inapplicable to the instant dispute. They also do not cite any case law to support the proposition that it is only experience in the same field as the case that matters when determining an attorney's reasonable hourly rate.

Nevertheless, Plaintiff seeks, without any justification, an hourly rate for Cela that is above the range of rates typically awarded to senior associates. *See Haltman*, 2018 WL 7291396, at *8 (explaining that the fee applicant has the burden to "persuasively establish[ ]" that higher rates than those typically awarded in the district should apply in a particular dispute (quotations and citation omitted)); *Doe v.*

---

[5] As set forth below, Plaintiff cites a similar "Westlaw database" number in support of the requested hourly rate for many of the attorneys who worked on his case. Plaintiff does not submit any evidence to establish the Westlaw database number for any of the attorneys. Therefore, the undersigned will not consider these cases in assessing the reasonable hourly rates for these attorneys.

7

*Unum Life Ins. Co. of Am.*, No. 12-CV-9327 (LAK), 2016 WL 749886, at *2 (S.D.N.Y. Feb. 23, 2016) (declining to award the higher fee sought by the plaintiff because the "plaintiff did not sustain his burden of proving that the higher rates he seeks" are reasonable). Accordingly, the undersigned recommends that Cela's rate be reduced to $275.

        3.      *Hiraman*

Plaintiff proposes an hourly rate of $300 for Hiraman. (Dkt. 95-2 ¶ 17.) Defendants contend that this rate should be reduced to $100. (Dkt. 103 at 4.)

The Mesidor Declaration states that in 2015, Hiraman graduated from the Maurice A. Deane School of Law and was admitted to the New York bar. (Dkt. 95-2 ¶¶ 14-16.) The rest of the information provided about Hiraman in the Declaration focuses on Hiraman's activities and honors in undergraduate and law school and the professional associations of which she is a member. (*Id.* ¶¶ 15-16.) In the Opposition Memorandum, Defendants state that Hiraman is "a junior associate" and that "[n]o experience is described in the application with respect to her." (Dkt. 103 at 4.)

In the Reply Memorandum, Plaintiff provides more information about Hiraman's experience, stating that "in her five years in practice, Hiraman has been counsel in 25 cases in the EDNY and 48 cases in the SDNY." (Dkt. 112-9 at 3 (citing Dkt. 112-3).) Plaintiff also claims that "[t]hirteen published cases bear Hiraman's name in the Westlaw database, all of them employment cases." (*Id.*)

Although Plaintiff says that Hiraman has been practicing for five years, that was at the time that the Reply Memorandum was filed. Depending on when Hiraman was admitted to the bar, she was either a third- or fourth-year associate at the time of the Motion. Of the 73 cases listed on the two docket sheets, over half (approximately 55%) were filed after January 4, 2019. (*See* Dkt. 112-3.)

Courts in this district typically award around $150 for associates with either three or four years of experience. *See LG Cap. Funding, LLC*, 2019 WL 3082478, at *3 (finding that $150 is a reasonable rate for a fourth-year associate); *Haltman*, 2018 WL 7291396, at *10 (finding that "$200 is reasonable

8

and appropriate" for an associate who "has been practicing law for fewer than five years"); *Kindle v. Dejana*, 308 F. Supp. 3d 698, 714-16 (E.D.N.Y. 2018) (finding that $200 is a reasonable hourly rate for an associate with four years of experience). Accordingly, the undersigned respectfully recommends $150 as Hirman's reasonable hourly rate.

    4.    *Lopez*

Plaintiff proposes a rate of $250 per hour for Lopez (Dkt. 95-2 ¶ 19), which Defendants contend should be reduced to $100 (Dkt. 103 at 5).

The Mesidor Declaration states that Lopez "attended Northeastern University School of Law and was admitted to practice in January 2016." (Dkt. 95-2 ¶ 18.) While in law school, she represented low-income clients, served as a research assistant to a law professor, interned for Judge Bruce M. Seyla on the United States Court of Appeals for the First Circuit, and interned with the Massachusetts Attorney General's Civil Rights Division. (*Id.*)

Defendants argue that Lopez's rate should be reduced because she is a second-year associate and "she appears to have no civil rights experience." (Dkt. 103 at 5.) In the Reply Memorandum, Plaintiff explains that Lopez "has significant experience for a fourth-year attorney, having worked on 37 cases in the EDNY and 18 cases in the SDNY." (Dkt. 112-9 at 3; *see also* Dkt. 112-4.) Lopez is also "credited with 11 published cases on Westlaw." (Dkt. 112-9 at 3.)

At the time of the Motion, Lopez was either a second- or third-year associate. Of the 55 cases on the docket sheets, approximately 27% are after the Motion was filed. (*See* Dkt. 112-4.) Courts in this district typically award approximately $150 per hour for similarly situated associates. *See Datiz v. Int'l Recovery Assocs., Inc.*, No. 15-CV-3549 (DRH)(AKT), 2020 WL 3790348, at *4 (E.D.N.Y. July 7, 2020) (finding that $150 is a reasonable hourly rate for a junior associate); *Singh v. A&A Mkt. Plaza, Inc.*, No. 15-CV-7396 (AKT), 2019 WL 4861882, at *4, *9 (E.D.N.Y. Sept. 30, 2019) (finding that $160 is a reasonable hourly rate for a third-year associate).

9

Accordingly, the undersigned respectfully recommends that the reasonable billing rate for Lopez is $150 per hour.

5.  *Welch*

The Mesidor Declaration merely states that Welch "graduated from Brooklyn Law School and was admitted to practice law in 2013" and that Plaintiff "propos[es] an hourly rate of $300.00 for" her. (Dkt. 95-2 ¶ 20.) In the Reply Memorandum, Plaintiff provides some additional information about Welch: she practiced for seven years; was "counsel in 41 cases in the EDNY and 82 cases in the SDNY;" and, according to the Westlaw database, has "28 published employment discrimination cases." (Dkt. 112-9 at 4 (citing Dkt. 112-5).)

At the time of the Motion, Welch had been practicing law for six years. Accordingly, the undersigned respectfully recommends that a reasonable billing rate for Welch is $250. *See Haltman*, 2018 WL 7291396, at *9.

### B.  *Reasonableness of the Paralegals' Hourly Rate*

Plaintiff seeks fees for Candy Hernandez, Kevin Guaranda, Tatiana Avila, and Madonna Isaac,[6] all of whom are paralegals who bill at $100 per hour. (Dkt. 95-2 ¶¶ 21-23, 25.) Additionally, Plaintiff seeks fees for Amanda Nunez, who is described variously as a paralegal and a "receptionist/legal assistant." (*Id.* ¶ 24.) Her hourly rate is also $100. (*Id.*)

Defendants argue that the billing rates for all of the paralegals, including Nunez, should be reduced. Specifically, they contend that Guaranda's hourly rate should be reduced to $75 and that Hernandez's rate should be reduced to $70. (Dkt. 103 at 6-7.) Defendants also argue that the time billed by Nunez, Avila, and Isaac should not be recoverable because none of them "hold[s] a certification as a paralegal," Plaintiff has provided no information "with respect to the experience of

---

[6] Isaac's name is spelled inconsistently throughout Plaintiff's briefing. (*See, e.g.*, Dkt. 95-2 ¶ 25 (spelling her name as "Issac"); *id.* at 8 ("Isaac").) The undersigned assumes it is spelled Isaac.

these individuals other than the very bare bones descriptions of their work on this case," and the work Nunez, Avila, and Isaac "performed is largely secretarial so their time is general overhead and should be covered by the attorney hourly rate." (*Id.* at 6.)

The parties disagree as to the prevailing hourly rates for paralegals in this district. Plaintiffs state that the rates are between $75 and $100. (Dkt. 95-1 at 6; Dkt. 112-9 at 4.) Defendants contend that the range is broader, from $70 to $100 per hour. (Dkt. 103 at 3.) The undersigned finds that the broader hourly rate is appropriate because it allows for greater differentiation in the rates for paralegals with different experience levels. *See Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068 (SJF)(AYS), 2020 WL 473619, at *12 (E.D.N.Y. Jan. 29, 2020) (stating that courts in this district typically award fees ranging from "$70 to $100 for paralegals in fee-shifting cases"); *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 212 (E.D.N.Y. 2019) (same). One hundred dollars per hour is the appropriate rate "for those [paralegals] with significant experience," while "an hourly rate of $70 [is] appropriate for those with less or minimal experience." *Cap. One, N.A.*, 2020 WL 423422, at *4.

As of the time the Motion was filed, Hernandez had six years of experience as a paralegal (Dkt. 95-2 ¶ 22), Guaranda had four years of experience (*id.* ¶ 21), and contrary to Defendants' claim, Avila had three years of experience as she "became a paralegal in 2016" (*id.* ¶ 23). The undersigned respectfully recommends that the reasonable hourly rate for Hernandez is $80 and the reasonable rate for Guaranda and Avila is $70. *See Cap. One, N.A.*, 2020 WL 423422, at *4 (finding that the reasonable hourly rate for paralegals with over ten years of experience is $100 and the reasonable hourly rate for paralegals with less than five years of experience is $70); *see also CIT Bank N.A. v. Gordon*, No. 17-CV-3972 (ADS)(SIL), 2020 WL 4587446, at *3 (E.D.N.Y. May 10, 2020), *R&R adopted*, 2020 WL 2711420 (E.D.N.Y. May 26, 2020) (reducing the hourly rates of the paralegals from $240 and $165 to $90).

Defendants incorrectly describe Isaac's work. She was not an assistant at Phillips & Associates but a paralegal, a position she has held since the summer of 2016. (Dkt. 95-2 ¶ 25.) Isaac started

11

working for law firms in 2011, when she worked for three years at two firms in Trinidad. However, the Mesidor Declaration does not say what Isaac did for these firms. (*Id.*) Sometime after June 2014, Isaac emigrated to the United States and worked as "a paralegal/office assistant handling paralegal and office work for Harris, St. Laurent & Chaudhry LLP." (*Id.*) Therefore, the undersigned finds it reasonable to conclude that, at the time the Motion was filed, Harris had at least four years of paralegal experience. Accordingly, the undersigned respectfully recommends an hourly rate of $70 for Isaac.

Plaintiff inconsistently describes Nunez's work. The heading for the paragraph that describes her work states, "Amanda Nunez, paralegal." (Dkt. 95-2 at 6.) Yet the paragraph directly under the heading states that, "Ms. Nunez became a receptionist/legal assistant in 2014." (*Id.* ¶ 24; *see also id.* at 8 ("Amanda Nunez (Legal Assistant)").) Even assuming Nunez is a legal assistant, her time is still compensable. *See Trs. of Empire State Carpenters Annuity, Apprenticeship, Lab.-Mgmt. Coop., Pension & Welfare Funds v. Penco United, LLC*, No. 13-CV-4745 (SJF)(AKT), 2015 WL 1650960, at *4 (E.D.N.Y. Apr. 14, 2015) (finding that the requested rates of $90 per hour and $100 per hour "for services performed by the legal assistants [ ] are reasonable"); *Szczepanek v. Dabek*, No. 10-CV-2459 (SJF)(ARL), 2011 WL 846193, at *8 (E.D.N.Y. Mar. 7, 2011) (stating that the prevailing hourly rates for legal assistants is between $70 and $80 per hour). Given that Nunez had, at most, five years of experience (as either a legal assistant or a paralegal), $70 is a reasonable hourly rate for her services.

### C.   *Travel Time*

Defendants contend that the requested fees should be reduced because Plaintiff's counsel did not halve their hourly rate for travel time. (Dkt. 103 at 7.) Specifically, Defendants argue that Mesidor's "bill for travel time of 1.3 x $450 = $585.00 should be reduced by 50% or $292.50." (*Id.* at 7.)

Plaintiff agrees that travel time should be reduced by half. (Dkt. 95 at 3.) However, Plaintiff's counsel has not reduced their billing rates for travel time. (*See, e.g.*, Dkt. 95-4 Sept. 17, 2018 entry

(charging Stevens's full rate of $300 per hour for "[t]ravel to and from court for jury deliberations").) As Plaintiff acknowledges, this is improper. (*See* Dkt. 95 at 3.) *See also Monge,* 2020 WL 1666460, at *8 (explaining that it is "customary" to apply a "50% billing discount" to travel time "in this District" (footnote omitted)); *Ramirez v. Roka Japanese Food, Inc.*, No. 18-CV-296 (ST), 2019 WL 2372866, at *9 (E.D.N.Y. June 5, 2019) ("However, courts in this Circuit reduce the hourly rate for each hour of travel by 50%." (citing *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 139 (2d Cir. 2008))).

Plaintiff's counsel and paralegals inconsistently billed their travel time. In some instances, they have stand-alone billing entries for their time spent traveling. (*See, e.g.*, Dkt. 95-4 Sept. 17, 2018, Sept. 4, 2018 entries.) In other instances, they have block billed their travel with other work, making it difficult to determine what amount of time was spent travelling and what time was spent on the other work. (*See, e.g., id.*, Sept. 14, 2018, Sept. 5, 2018 entries.) Accordingly, the undersigned recommends a 50 percent reduction in billing rate when the attorney or paralegal separately billed his or her travel time. The undersigned further recommends a 25 percent reduction in billing rate when the attorney or paralegal block billed travel time with other work. *See TADCO Constr. Corp. v. Dormitory Auth. of N.Y.*, No. 08-CV-0073 (KAM)(MDG), 2016 WL 11669712, at *5 (E.D.N.Y. Dec. 21, 2016) ("In instances where the court will grant attorney's fees but the record keeping consists of block-billing, it is appropriate to implement a percentage reduction to the requested hours because block entries make it difficult for the court to determine whether the time expended was reasonable." (citation omitted)).

\*   \*   \*

In sum, the undersigned recommends that the following hourly rates are reasonable:

13

| Attorney/Paralegal/Assistant | Recommended Hourly Rate |
|---|---|
| Stevens | $250 |
| Cela | $275 |
| Hiraman | $150 |
| Lopez | $150 |
| Welch | $250 |
| Hernandez | $80 |
| Guaranda | $70 |
| Avila | $70 |
| Isaac | $70 |
| Nunez | $70 |

The undersigned further respectfully recommends reducing all attorney, paralegal, and assistant time for travel by 50 percent or 25 percent, depending on whether that time was block billed.

## II.   Reasonableness of the Time Billed

In addition to evaluating the reasonableness of the hourly rate sought, the court must also consider whether the "number of hours for which compensation is sought is reasonable." *Monge*, 2020 WL 1666460, at *7 (quotation and citation omitted). The fee applicant bears the burden to show that the hours spent are not "excessive, redundant, or otherwise unnecessary." *Id.* (quotation and citation omitted). If a fee application has "such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quotation and citation omitted).

Defendants argue that Plaintiff wrongly seeks to recover fees for time spent on two claims that were dismissed on summary judgment: retaliation and constructive discharge. (Dkt. 103 at 8-9.) They request that "[P]laintiff's attorneys' fees should be discounted by 5% for each of the claims that were dismissed." (*Id.* at 9.) In addition, Defendants request that the fees sought should be reduced by a further five percent as a result of Plaintiff's attorneys' "duplicative and unproductive activities." (*Id.* at 10.)

The undersigned also evaluates the reasonableness of Plaintiff's counsel's request for fees

14

related to drafting the Reply Memorandum.

### A. *Recovering Fees for Claims Dismissed on Summary Judgment*

"There is a 'strong presumption' that the lodestar amount represents a reasonable fee under Section 1988." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) (quoting *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992)). "So long as the plaintiff's unsuccessful claims are not 'wholly unrelated' to the plaintiff's successful claims, hours spent on the unsuccessful claims need not be excluded from the lodestar amount." *Id.* (quoting *Grant*, 973 F.2d at 101). "Where the lines become blurry, a court need not become enmeshed in a meticulous analysis of every detailed facet of the professional representation to determine the proper award, nor should a request for attorney's fees result in a second major litigation." *Canada Dry Del. Valley Bottling Co. v. Hornell Brewing Co.*, No. 11-CV-4308 (PGG), 2013 WL 6171660, at *2 (S.D.N.Y. Nov. 25, 2013) (quotations, citations, and alteration omitted).

The claims that were dismissed on summary judgment are not wholly unrelated to those that survived. While Defendants argue that the dismissed claims were "distinct claims, which required factual evidence that [P]laintiff could not provide," (Dkt. 103 at 8) they are not wholly unrelated to Plaintiff's successful claims. (*See also id.* at 9 ("The constructive discharge claim is particularly distinct form the harassment claim, since the former dealt with the loss of a job while the latter addressed conditions at the job."))

Plaintiff's retaliation claim was based on two allegedly adverse employment actions, the five counseling memoranda he received and the hostile work environment he experienced after he made his complaint. (Dkt. 51 at 10-11.) Although the Court found that the memoranda could not establish a retaliation claim because Plaintiff did "not seriously contend that the incidents described [in the memoranda] did not occur" (*Id.* at 11), the Second Circuit acknowledged that "it was permissible for the jury to consider whether the counseling memoranda were also issued based on Frattali's racial and

15

national origin animus and contributed to [Plaintiff's] hostile work environment." (Dkt. 105 at 8.) As for the second basis for Plaintiff's retaliation claim, the Court found that the hostile work environment Plaintiff experienced did not constitute retaliation because the level of harassment "remained static or even lessened after Plaintiff complained about it." (Dkt. 51 at 12.) However, the facts underlying this claim overlap with Plaintiff's hostile work environment claim based on race and national origin, which survived the motion for summary judgment. (*Compare* Dkt. 51 at 6-7 *with id*. at 11-12.) Accordingly, the undersigned concludes that Plaintiff's unsuccessful retaliation claim was not wholly unrelated to his successful claims. *See Canada Dry Del. Valley Bottling Co.*, 2013 WL 6171660, at *7 (explaining that claims are not wholly unrelated where they "involve a common core of facts" (quotation and citation omitted)).

The undersigned reaches the same conclusion with respect to Plaintiff's constructive discharge claim. A claim for constructive discharge is premised upon a hostile work environment. *See Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004) (holding that to establish constructive discharge, a plaintiff "must make a further showing" on top of establishing a hostile work environment, namely "that the abusive working environment became so intolerable that [the plaintiff's] resignation qualified as a fitting response"). Thus, Plaintiff's unsuccessful constructive discharge claim is not wholly unrelated to his successful hostile work environment claim.

Accordingly, the undersigned respectfully recommends that Plaintiff's requested fees not be reduced on the basis of the claims that did not survive the summary judgment motion.

### B.   *Duplication*

Defendants next contend that Plaintiff's fees request should be reduced because certain of the entries are "inadequate, duplicative or meaningless." (Dkt. 103 at 9 (footnote omitted).) According to Defendants, such inadequate entries include those related "to plaintiff's largely unsuccessful defense of the motion for summary judgment." (*Id*.) However, as explained above, unless the unsuccessful

16

claims are wholly unrelated to the successful claims, the fees should not reduced on that basis. Moreover, Defendants do not explain how this lack of success warrants an additional reduction of Plaintiff's requested fees due to "duplication."

Nonetheless, a review of the billing entries submitted by Plaintiff reveals a number of entries that are insufficient. For example, Hiraman billed over thirty hours to "Deposition digests." (*See, e.g.*, Dkt. 95-4 June 12, 2018, June 11, 2018, June 6, 2018, June 5, 2018 entries.) Examples of other insufficient entries include "file review" (*id.* Aug. 13, 2018 entry), "Andrew Jackson called RE Technology walk through for Kevin" (*id.* May 21, 2018 entry), "Motion re 30(6)(b) [sic] to NW" (*id.* Oct. 29, 2015 entry), "asked DC to draft discov packet" (*id.* Apr. 27, 2015 entry), and "Placed in bin to be filed" (*id.* Mar. 9, 2015 entry). Such vague entries prevent a review of whether counsel spent too much time on a particular task. Accordingly, the undersigned recommends reducing Plaintiff's requested fees by five percent. *See Mister Softee, Inc. v. Konstantakakos*, No. 15-CV-4770 (SJ)(SMG), 2016 WL 11445964, at *6 (E.D.N.Y. June 27, 2016), *R&R adopted*, 2016 WL 4250314 (E.D.N.Y. Aug. 11, 2016) ("Where time entries are vague, duplicative, or otherwise inadequate, a court may make an 'across-the-board reduction, or percentage cut, in the amount of hours.'" (quoting *T.S. Haulers, Inc. v. Cardinale*, No. 09-CV-0451 (SJF)(ARL), 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011)).

C.    *Time Spent on the Reply Memorandum*

In the Reply Memorandum, Plaintiff requests an additional award in the amount of $5,040.00, which represents the attorney's fees expended drafting the Reply Memorandum and the supporting documentation. (Dkt. 112 at 1; Dkt. 112-9 at 9.) Time spent by counsel on fees motions can be recovered by a prevailing litigant. *See Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1184 (2d Cir. 1996) (reversing "the district court's order denying the plaintiff an award of attorneys' fees for the time incurred in litigating the fee claim"); *TADCO Constr.*, 2016 WL 11669712, at *6 ("The court may award a fee for the time spent in preparing and defending an application for fees." (citation omitted)).

17

Bergstein drafted the Reply Memorandum. (Dkt. 112 at 1-2.) He "expended 11.20 hours" on the brief. (*Id.* at 2.) A copy of his timesheet was filed at Docket 112-8. According to this timesheet, some of Bergstein's time was spent "scan[ning] in exhibits" for the supplemental affirmation and "draft[ing the] table of contents/table of authorities for" the Reply Memorandum. (Dkt. 112-8.) These tasks should have been performed by a paralegal and not a partner. *See Barile v. Allied Interstate, Inc.*, No. 12-CV-916 (LAP)(DF), 2013 WL 795649, at *10 (S.D.N.Y. Jan. 30, 2013), *R&R adopted*, 2013 WL 829189 (S.D.N.Y. Mar. 4, 2013) (finding that "revising tables of contents and authorities" are paralegal tasks). Because Bergstein spent less than an hour on these tasks (*see* Dkt. 112-9 (stating that he spent 0.60 hours on "draft table of contents/table of authorities for memo of law" and 0.20 on "scan in exhibits for SB supp. affirmation"), the undersigned respectfully recommends that Plaintiff's request for fees spent drafting the Reply Memorandum be reduced by ten percent. *See Flores v. Food Express Rego Park, Inc.*, No. 15-CV-1410 (KAM)(SMG), 2016 WL 386042, at *3 (E.D.N.Y. Feb. 1, 2016) (reducing an attorney's hours by 15% pursuant to its "'authority to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application'" (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987))).

### III.     Calculating the Recommended Fee Award

As set forth in the chart immediately below, the undersigned first calculated the fees for Plaintiff's attorneys and paralegals on tasks other than the Reply Memorandum, without any reductions.

18

| Biller | Rate | Non-Travel Time | Rate x Non-Travel Time | Travel Time | 50% Rate x Travel Time | Block Billed Travel | 75% Rate x Block Billed Travel |
|---|---|---|---|---|---|---|---|
| Avila | $70 | 0.2 | $14.00 | | | | |
| Bergstein | $450 | 42.25 | $19,012.50 | | | | |
| Cela | $275 | 9.45 | $2,598.75 | | | | |
| Guaranda | $70 | 35.5 | $2,485.00 | 0.7 | $24.50 | 18.6 | $976.50 |
| Hernandez | $80 | 10.45 | $836.00 | | | | |
| Hiraman | $150 | 51.5 | $7,725.00 | | | | |
| Isaac | $70 | 0.22 | $15.40 | | | | |
| Lopez | $150 | 8 | $1,200.00 | | | | |
| Mesidor | $450 | 157.95 | $71,077.50 | 3.95 | $888.75 | 20 | $6,750.00 |
| Nunez | $70 | 2.05 | $143.50 | | | | |
| Stevens | $250 | 109.95 | $27,487.50 | 9.4 | $1,175.00 | 2.2 | $412.50 |
| Welch | $250 | 38.2 | $9,550.00 | | | | |
| *Totals* | | | $142,145.15 | | $2,088.25 | | $8,139.00 |

Thus, the undersigned calculated that the fees without any reductions are $152,372.40, which, when reduced by five percent to account for the insufficient billing entries, is $144,753.78.

Next, the undersigned calculated the appropriate fees for the Reply Memorandum by reducing the fees sought by Plaintiff $5,040.00 by ten percent, which is $4,536.00.

## **CONCLUSION**

Based on the foregoing, the undersigned respectfully recommends that the Court grant the Motion and approve Plaintiff's request for attorneys' fees in the reduced amount of $149,289.78.

Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any such objection waives the right to appeal the District Court's Order. *See Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d. Cir. 2010); *Marcella v. Cap. Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d. Cir. 2002).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York
September 22, 2020