UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
                                        :

NEIL SOOROOJBALLIE,                    :
                                         :

         Plaintiff,              :

                                         :         **REPORT AND**

      -against-              :         **RECOMMENDATION**
                                         :         1:15-cv-01230 (WFK)(PK)

PORT AUTHORITY OF NEW YORK AND NEW    :
JERSEY, and GARY FRATTALI,         :
                                         :

        Defendants.           :
                                         :
---------------------------------------------------------------- X

**Peggy Kuo, United States Magistrate Judge:**

On referral from the Honorable William F. Kuntz, II, is Plaintiff Neil Sooroojballie's Motion

for Reasonable Attorneys' Fees Expended on Appeal (the "Appellate Fees Motion," Dkt. 114). As

set forth below, after careful consideration of the filings by all parties, the undersigned respectfully

recommends that Plaintiff be awarded attorneys' fees in the amount of $62,802.19.

## PROCEDURAL HISTORY

On October 19, 2018, the Port Authority of New York and New Jersey ("Port Authority")

and Gary Frattali (collectively, "Defendants") appealed the October 5, 2018 final judgment in this case

("Judgment," Dkt. 83), to the United States Court of Appeals for the Second Circuit. (Dkt. 87.)

Defendants challenged the Judgment on five grounds: (1) the Court "should have dismissed the §

1981 claim against the Port Authority at summary judgment because [Plaintiff] failed to offer evidence

of a municipal policy or custom as required under that statute;" (2) the Court "erred in allowing time-

barred acts and allegedly retaliatory acts to be considered by the jury with respect to the hostile work

environment claim, and the admissible evidence was insufficient to support the jury's verdict as a

matter of law;" (3) the Court "erred in its instructions to the jury;" (4) the compensatory and punitive

damages awards "were excessive, and Frattali was improperly precluded from introducing evidence of his finances in connection with the punitive damages award;" and (5) the attorneys' fees award "was excessive." (Dkt. 105 at 2.)

The Second Circuit agreed with Defendants in part, holding that the Court should have dismissed Plaintiff's § 1981 claim (*see id.* at 3-5) and that "unless [Plaintiff] accept[ed] a remittitur of the award to $250,000," a new trial was warranted as to Plaintiff's emotional distress damages because the jury award "far surpasse[d] the upper limit of the reasonable range" (*id.* at 18 (footnote omitted)). The Second Circuit also "remand[ed] the issue [of attorneys' fees] to the district court to allow it to fully consider [D]efendants' opposition and to provide the grounds for its discretionary decision in connection with the fees motion." (*Id.* at 23.)   However, the Second Circuit rejected Defendants' challenges to Plaintiff's hostile work environment claims (*see id.* at 5-11), the jury instructions (*see id.* at 11-13), and the jury's punitive damages award against Frattali (*id.* at 18-21).   Plaintiff accepted the remittitur of $250,000 on June 9, 2020. (Dkt. 107.)

On January 4, 2019, Plaintiff filed a Motion for Reasonable Attorneys' Fees and Costs for the prosecution of his claims before this Court ("Initial Fees Motion," Dkt. 95).   The undersigned recommended that Plaintiff be awarded $149,289.78 in attorneys' fees (the "Initial Fees R&R," Dkt. 122).  The Initial Fees R&R was adopted on October 21, 2020. (Dkt. 124.)

The parties agreed to a briefing schedule for the Appellate Fees Motion on June 16, 2020. (Dkt. 108.)  Judge Kuntz referred the Motion to the undersigned for a report and recommendation on July 22, 2020.  (Dkt. 113.)

Pursuant to the agreed-upon briefing schedule, on September 11, 2020, Plaintiff filed the Appellate Fees Motion, the Memorandum of Law in Support of His Application for Attorneys' Fees on Appeal ("Memorandum in Support," Dkt. 116), the Affirmation of Stephen Bergstein in Support of Motion for Reasonable Attorneys' Fees and Costs Expended on Appeal (Dkt. 115) and the

Declaration of Marjorie Mesidor in Support of Motion for Reasonable Attorneys' Fees and Costs on Appeal ("Mesidor Appellate Declaration," Dkt. 117) and the accompanying exhibits.  On the same day, Plaintiff also filed the Reply Memorandum of Law in Further Support of His Application for Attorneys' Fees on Appeal ("Reply," Dkt. 120), the Affirmation of Stephen Bergstein in Further Support of Motion for Reasonable Attorneys' Fees and Costs Expended on Appeal ("Bergstein Appellate Reply Affirmation," Dkt. 118), the Declaration of Marjorie Mesidor in Further Support of Motion for Reasonable Attorneys' Fees and Costs on Appeal ("Mesidor Appellate Reply Declaration," Dkt. 119), and the accompanying exhibits.  Defendants filed their opposition on September 14, 2020 ("Opposition," Dkt. 121).

Plaintiff seeks "$84,210 in attorneys' fees and costs"[1] for the work performed by his counsel on the appeal.  (Mem. in Support, Dkt. 116 at 1; Mesidor Appellate Decl., Dkt. 117 ¶ 2.)  These fees cover 203.3 hours of work performed by: Marjorie Mesidor, a partner at Phillips & Associates (*id.* at 9); Stephen Bergstein, a founder of Bergstein & Ullrich (Dkt. 116 at 9; Bergstein Appellate Aff., Dkt. 115 ¶ 2); Brittany Stevens, an associate at Phillips & Associates (Dkt. 116 at 10; Dkt. 117 ¶¶ 6, 8); Katerina Housos, a lawyer at Phillips & Associates (Dkt. 116 at 10; Dkt. 117 ¶ 9); Irene Chan, a lawyer at Phillips & Associates (Dkt. 116 at 10; Dkt. 117 ¶ 11); and four paralegals at Phillips & Associates, Avinash Nandlal (Dkt. 117 ¶ 10), Kevin Guaranda (Dkt. 117 ¶ 12), Candy Hernandez (Dkt. 117 ¶ 13), and Madonna Isaac[2] (Dkt. 117 ¶ 14).  Plaintiff also requests an additional $5,220.00 in attorneys' fees for drafting the Reply, which was done entirely by Bergstein.  (Reply, Dkt. 120 at 10.)

Defendants challenge the reasonableness of the hourly rates sought by Plaintiff's counsel and

---

[1] Although Plaintiff states that he is seeking costs, he does not state what those costs are or submit any documentation in support of such costs.

[2] As in the materials submitted in support of the Initial Fees Motion (Dkt. 122 at 10 n.6), Isaac's name is spelled inconsistently in the materials supporting the instant motion.  (*See* Dkt. 117 ¶ 14 ("Issac"); Dkt. 117-2 at 13 ("Isaac").)  The undersigned assumes the correct spelling is Isaac.

the reasonableness of the hours Plaintiff's counsel spent on the appeal.  (Opp., Dkt. 121 at 3-10.)

Defendants also argue that the fees sought should be reduced because Plaintiff was unsuccessful on

appeal.  (*Id.* at 11-12.)

## LEGAL STANDARD

Section 2000e-5(k) of Title 42 states:

> In any action or proceeding under this subchapter the court, in its discretion, may
> allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part
> of the costs . . . .

Under § 2000e-5(k), the prevailing party is entitled to fees for attorney time expended on an appeal.

*See Cush-Crawford v. Adchem Corp.*, 234 F. Supp. 2d 207, 212 (E.D.N.Y. 2002) (finding that the plaintiff

was entitled to attorney fees because "the plaintiff prevailed at the circuit level").

Reasonable attorneys' fees in Title VII cases are calculated using the "lodestar" method.  *Pinner*

*v. Budget Mortg. Bankers, Ltd.*, 336 F. Supp. 2d 217, 219 (E.D.N.Y. 2004); *see also Cush-Crawford*, 234 F.

Supp. 2d at 212 (applying the lodestar method to calculate reasonable attorneys' fees for an appeal).

"Under this method, the Court makes an initial calculation of a lodestar amount by multiplying the

number of hours reasonably spent on the litigation by a reasonable hourly rate."  *Pinner*, 336 F. Supp.

2d at 219 (citations omitted).  "The fee applicant must submit adequate documentation supporting

the requested attorneys' fees and costs."  *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020).

"There is no precise rule or formula for making [ ] determinations" on fee motions.  *Hensley v.*

*Eckerhart*, 461 U.S. 424, 436 (1983).  As a result, a district court is "afford[ed] . . . considerable

discretion in determining what constitutes reasonable attorney's fees in a given case."  *Barfield v. New*

*York City Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008).

## DISCUSSION

The Court first considers both parts of the lodestar calculation, *i.e.*, the reasonableness of the

rates sought by Plaintiff's counsel and the time they spent on the appeal.  The Court then considers

Defendants' argument that these fees should be further reduced because of the outcome of the appeal.

## I.   Lodestar Calculation

### A.   *Reasonableness of Hourly Rates*

Courts use "the forum rule" to determine whether an hourly rate is reasonable.  *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009).  "According to the forum rule, courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee."  *Id.* (quotations and citation omitted).  The burden is on the fee applicant to establish the reasonableness of the hourly rate sought.  *See Monge v. Glen Cove Mansion Hosp., LLC*, No. 18-CV-7229 (SJF)(SIL), 2020 WL 1666460, at *5 (E.D.N.Y. Apr. 2, 2020).

"The prevailing rates for attorneys in the E.D.N.Y. are approximately $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates."  *Rudler v. Houslander & Assocs., PLLC*, No. 18-CV-7068 (SFJ)(AYS), 2020 WL 473619, at *4 (E.D.N.Y. Jan. 29, 2020) (quotation, citation, and alterations omitted).[3]  "'[A]s to paralegals, courts in the Eastern District of New York have held that a range of $70 to $100 per hour is a reasonable fee . . . .'"  *Id.* at *12 (quoting *Litkofsky v. P & L Acquisitions, LLC*, No. 15-CV-5429 (DRH)(AKT), 2016 WL 7167955, at *10 (E.D.N.Y. Aug. 19, 2016)).[4]

### 1.   <u>Reasonableness of the Attorneys' Hourly Rates</u>

#### a.   *Mesidor and Bergstein*

---

[3] While citing *Rudler* (Dkt. 116 at 9), Plaintiff inconsistently states that the prevailing rates are "'$100 to $325 for associates in civil rights cases.'"  (Dkt. 116 at 9 (quoting *Thomas v. City of New York*, No. 14-CV-7513 (ENV)(VMS), 2017 WL 6033532, at *4 (E.D.N.Y. Dec. 1, 2017)).)  Defendants state that the prevailing "'hourly rates rang[e] from $200 to $450 per hour for partners'" and "'$100-$300 per hour for associates,'" (Dkt. 121 at 4 (quoting *Houston v. Cotter*, 234 F. Supp. 3d 392, 402 (E.D.N.Y. 2017))), even though in their opposition to the Initial Fees Motion, they stated that the range was: "1) $300-$450 for partners; 2) $200-$300 for senior associates; and 3) $100-$200 for junior associates."  (Dkt. 103 at 2-3 (footnote omitted).)

[4] Defendants agree that this is the range of prevailing rates for paralegals in this district.  (Dkt. 121 at 4.)  Plaintiff, however, contends that the range is narrower, from $75 to $100.  (Dkt. 116 at 10 (citing *Thomas*, 2017 WL 6033532, at *6).)

The requested hourly rate for both Mesidor and Bergstein is $450 per hour.  (Mem. in Supp., Dkt. 116 at 9.)  Mesidor is a partner at Phillips & Associates, "which is exclusively focused on litigating employment discrimination and wage hour claims."  (Mesidor Appellate Decl., Dkt. 117 ¶ 2.)  She graduated from Touro Law School in 2004, is a member of the New York and Connecticut state bars, and has "litigated more than 200 employment discrimination, civil rights and wage hour cases in the Southern and Eastern Districts of New York."  (*Id.* ¶¶ 2-4; *see also* Dkt. 117-1.)  Bergstein graduated from CUNY Law School in 1993.  (Bergstein Appellate Aff., Dkt. 115 ¶ 2.)  Since that time, he has focused on civil rights, employment, labor, and constitutional litigation, first at the Law Offices of Michael H. Sussman and then, beginning in September 2001, at his own firm.  (*Id.*)  Begstein "speak[s] regularly at CLE's [sic] on recent civil rights developments in the Second Circuit," and he has "represented countless plaintiffs in civil rights cases in the district court" and has "briefed or argued more than 200 appeals in the state and federal courts."  (*Id.* ¶ 3.)

In their opposition to the Initial Fees Motion, Defendants did not object to Mesidor or Bergstein's proposed hourly rates.  (*See* Dkt. 103.)  Nor do they contend here that $450 per hour is an inappropriate rate for either Mesidor or Bergstein.  Instead, they contend that as an "[a]lternative[ ]" to reducing "[e]xcessive time spent in preparing relatively straightforward arguments," "the rate for the second partner performing essentially the same job should be reduced to $200.00 per hour." (Opp., Dkt. 121 at 5.)  Defendants do not state which of the two lawyers' hourly rate should be reduced to $200.00, and they do not cite any cases to support their contention.

In *Brennan v. City of Middletown*, No. 18-CV-6148 (PED), 2020 WL 3820195 (S.D.N.Y. July 8, 2020), the prevailing plaintiff in a civil rights suit moved for attorneys' fees.  The plaintiff had two lawyers, Bergstein and Christopher Watkins.  Watkins primarily litigated the case on his own, with Bergstein only participating in trial preparation and the trial itself.  *See id.* at *12.  During the trial, "Bergstein did not examine witnesses, present arguments to the jury or participate in legal arguments

to any significant extent." *Id.* (footnote omitted).  The plaintiff sought $475 per hour for Watkins and $450 per hour for Bergstein.  *Id.*  The court found Watkins's rate to be reasonable.  *See id.* at *13.  However, it reduced Bergstein's rate to $250, which was "in line with the going rate for an experienced associate."  *Id.* at *12.  The court explained that it could not "award a second, similarly-experienced attorney partner-level compensation for second-chair trial support during this relatively simple trial."  *Id.*

Unlike in *Brennan*, neither Bergstein nor Mesidor merely provided "support" for the other attorney, who did all of the substantive legal work.  As explained further below, Bergstein and Mesidor divided the responsibilities for the appeal, with Bergstein doing most of the drafting and Mesidor doing the argument.  (*See* Dkts. 115-2, 117-2.)  Thus, it would not be appropriate to reduce either Bergstein or Mesidor's hourly rate to $200.  *See Saber v. N.Y. State Dep't of Fin. Servs.*, No. 15-CV-5944 (LGS)(SDA), 2019 WL 4781781, at *4-6 (S.D.N.Y. Sept. 6, 2019), *R&R adopted*, 2019 WL 4747670 (S.D.N.Y. Sept. 30, 2019) (awarding Bergstein an hourly rate commensurate with his experience even though the court later found that some of the time that Bergstein spent working on an appeal was duplicative of the work performed by other lawyers).  Any excessive billing or duplication will be addressed by either not awarding compensation for the excessive hours, *see, e.g., Kapoor v. Rosenthal*, 269 F. Supp. 2d 408, 414-15 (S.D.N.Y. 2003) (excluding from the attorneys' fees awarded those hours that were "duplicative and/or excessive"), or reducing the total fees by a certain percentage, *see, e.g., Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 509 (S.D.N.Y. 2012) ("To account for these excesses, the Court reduces the total attorneys' fees by 20%.").

Accordingly, the undersigned respectfully recommends that Bergstein and Mesidor be awarded their requested rates of $450 per hour.

### b.   Stevens

Plaintiff proposes $300 per hour as the appropriate rate for Stevens.  (Dkt. 116 at 10.)

Defendants contend that "[n]either [Stevens's proposed] rate nor the time [she spent working on Plaintiff's appeal] has been justified in the billing records." (Dkt. 121 at 9.) However, they do not propose an alternative rate. (*See id.*)

Plaintiff also proposed $300 as Stevens's rate in the Initial Fees Motion (Dkt. 95-2 ¶ 8), submitting the same materials in support as he submitted here. (*Compare* Mesidor Appellate Decl., Dkt. 117, ¶¶ 6-8 *with* Mesidor Decl. in Supp. of the Initial Fees Mot., Dkt. 95-2, ¶¶ 6-8; *compare* Mesidor Appellate Reply Decl., Ex. 1, Dkt. 119-1 *with* Bergstein Supp. Aff. in Supp. of the Initial Fees Mot., Ex. 1, Dkt. 112-1.) Because Plaintiff has not provided any additional information to support a different rate for work done on the appeal, the reasonable hourly rate for Stevens should be $250, as recommended in the Initial Fees R&R. *See Monge*, 2020 WL 1666460, at *5 ("The fee applicant has the burden to justify the reasonableness of the requested rate, and plaintiffs' attorney should establish her hourly rate with satisfactory evidence—in addition to the attorney's own affidavits." (quotations, citation, and alterations omitted)).

### c.      *Housos*

Plaintiff's proposed hourly rate for Housos is $300. (Dkt. 116 at 10; Dkt. 117 ¶ 9.) Defendants argue that "the description of [Housos's] background is devoid of experience in the field of civil rights" and instead "appears to be experienced in international transactions." (Dkt. 121 at 9-10.)

The Mesidor Appellate Declaration states that Housos is a common law and civil attorney, with a Bachelor of Laws from the National and Kapodistrian University of Athens in Athens, Greece, an L.L.M. in Commercial and Corporate Law from Queen Mary University in London, the United Kingdom, and a second L.L.M. in International Law and Justice from Fordham University. (Dkt. 117 ¶ 9.) The Declaration does not state the years in which Housos obtained her degrees. She was the International Graduate Editor of the Fordham International Law Journal, was part of the Community Economic Development legal clinic, was an Advisor to Cyprus's Permanent Mission to the United

Nations, and a law clerk at the United Nations International Criminal Tribunal for Rwanda.  (*Id.*)  She was admitted to the New York bar in 2016 and has worked at law firms in both New York and Greece.  (*Id.*)  In the Mesidor Appellate Reply Declaration, Mesidor attached as an exhibit a list of 33 civil rights cases in the Southern and Eastern Districts which Housos litigated.[5]  (Dkt. 119 ¶ 3; Dkt. 119-2.)

At the time of the Appellate Fees Motion, Housos was, at most, a fourth-year lawyer.  Courts in this district typically award around $150 per hour for associates with either three or four years of experience.  *See LG Cap. Funding, LLC v. 5 Barz Int'l, Inc.*, No. 16-CV-2752 (KAM)(JO), 2019 WL 3082478, at *3 (E.D.N.Y July 15, 2019) (finding that $150 is a reasonable rate for a fourth-year associate); *Kindle v. Dejana*, 308 F. Supp. 3d 698, 713-16 (E.D.N.Y. 2018) (holding that $200 is a reasonable hourly rate for an associate with four years of experience); *Off. Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, No. 13-CV-5475 (JS)(AKT), 2018 WL 7291396, at *10 (E.D.N.Y. Aug. 24, 2018), *R&R adopted in relevant part* (Sept. 27, 2018 Dkt. Order) (finding that "$200 is reasonable and appropriate for" an associate who "has been practicing law for fewer than five years").  Accordingly, the undersigned respectfully recommends $150 as Housos's reasonable hourly rate.

### d.   Chan

Plaintiff proposes an hourly rate of $250 for Chan.  (Dkt. 116 at 10.)  Rather than propose an alternative rate for Chan, Defendants argue that she "seemed to have no real function [on the appeal and] should be discounted in its entirety."[6]  (Dkt. 121 at 10.)

Chan graduated with honors from St. John's University in 2009 with a Bachelor of Science in Legal Studies.  (Dkt. 117 ¶ 11.)  In 2017, she received her J.D. from New England Law.  (*Id.*)  Between undergraduate and law school, Chan served seven years of active duty in the United States Marine

---

[5] All of the cases listed in Exhibit 2 to the Mesidor Appellate Reply Declaration started before the Appellate Fees Motion was filed.  (*See* Dkt. 119-2.)

[6] Whether and to what extent the amount of time that Chan billed to Plaintiff's appeal should be discounted will be addressed below.

Corps. (*Id.*) She also served as a paralegal and then a legal assistant to a Federal Chief Judge with the Department of Labor. (*Id.*) "She has been admitted to practice law in New York courts, the United States District Court for the Eastern District of New York, and the United States District Court for the Southern District of New York." (*Id.*) Prior to working at Phillips & Associates, Chan worked for another plaintiff's employment firm, "focusing on wage and hour litigation under the Fair Labor Standards Act." (*Id.*)

Plaintiff does not state when Chan was admitted to the New York bar. He also does not state the number of cases on which Chan has worked. Based on when she graduated from law school, Chan has practiced law for no more than three years. Courts in this district have typically awarded approximately $150 per hour for similarly situated associates. *See Datiz v. Int'l Recovery Assocs., Inc.*, No. 15-CV-3549 (DRH)(AKT), 2020 WL 3790348, at *4 (E.D.N.Y. July 7, 2020) (finding that $150 is a reasonable hourly rate for a junior associate); *Singh v. A&A Mkt. Plaza, Inc.*, No. 15-CV-7396 (AKT), 2019 WL 4861882, at *9 (E.D.N.Y. Sept. 30, 2019) (finding that $160 is a reasonable hourly rate for a third-year associate).

Accordingly, the undersigned respectfully recommends that the reasonable billing rate for Chan is $150 per hour.

### 2.    <u>Reasonableness of the Paralegals' Hourly Rates</u>

Plaintiff seeks to recover fees for four paralegals—Nandlal, Guaranda, Hernandez, and Isaac—at the rate of $100 per hour. (Mem. in Supp., Dkt. 116 at 10.) Defendants argue that the paralegal "rate should be reduced to $70 [to] reflect the simple nature of the tasks" they performed. (Opp., Dkt. 121 at 10.)

The Initial Fees R&R recommended that the hourly rates for Hernandez, Guaranda, and Isaac should be $80, $70, and $70, respectively. (Dkt. 122 at 14.) The information Plaintiff provided in the Appellate Fees Motion to justify the rates for these three paralegals is identical to the information

provided in the Initial Fees Motion.  (*Compare* Mesidor Appellate Decl., Dkt. 117 ¶¶ 12, 13, 14, *with* Mesidor Decl. in Supp. of the Initial Fees Mot., Dkt. 95-2 ¶¶ 21, 22, 25.)  Accordingly, the undersigned respectfully recommends the same hourly rates set forth in the Initial Fees R&R for these paralegals.

As for Nandlal, the Mesidor Appellate Declaration states that he "has been a paralegal with [Phillips & Associates] since March 2019."  (Dkt. 117 ¶ 10.)  Plaintiff does not state when Nandlal became a paralegal or provide any other information about his experience.  Accordingly, the undersigned recommends that his hourly rate be reduced to $70.  *See Chawla v. Metro. Surgery Assocs., P.C.*, No. 11-CV-6248 (RRM)(VMS), 2014 WL 4678023, at * 11 (E.D.N.Y. Sept. 19, 2014) ("set[ting] the hourly paralegal rate at the bottom end of the range" when the fee applicant provided no "background-and-experience information").

\*       \*       \*

In sum, the undersigned recommends that the following hourly rates be found reasonable:

| Attorney/Paralegal | Recommended Hourly Rate |
| --- | --- |
| Mesidor | $450 |
| Bergstein | $450 |
| Stevens | $250 |
| Housos | $150 |
| Chan | $150 |
| Hernandez | $80 |
| Guranda | $70 |
| Isaac | $70 |
| Nandlal | $70 |

**B.      Reasonableness of Time Billed**

In addition to evaluating the reasonableness of the hourly rate sought, the Court must also consider whether the "number of hours for which compensation is sought is reasonable." *Monge*, 2020 WL 1666460, at *7 (quotation and citation omitted). The fee applicant bears the burden to show that the hours spent are not "excessive, redundant, or otherwise unnecessary." *Id.* (quotation and citation omitted). If a fee application has "such surplusage, the court has discretion simply to deduct a

reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quotation and citation omitted).

Defendants object to the amount of time billed by Plaintiff on four grounds: (1) the issues in this appeal were not sufficiently complex to warrant the amount of time Plaintiff's counsel spent on them (Dkt. 121 at 5-6, 9, 12); (2) the work performed by Bergstein and Mesidor was excessive and duplicative (*id.* at 5-8); (3) the time billed by associates Stevens, Housos, and Chan should be discounted in whole or in part (*id.* at 9-10); and (4) the time billed by the paralegals should be reduced (*id.* at 10).

### 1.   Whether the Issues on Appeal Were Complex

Defendants contend that this case was not complex, pointing to the fact that the Second Circuit resolved the appeal by summary order.  (*See* Opp., Dkt. 121 at 12 ("Further, the issues on appeal were neither novel nor complex, which is the reason the Circuit issued a summary order.").) Disposition by summary order does not necessarily indicate that the issues on appeal were not complex.

Furthermore, Defendants have not shown that the issues on appeal were so simple and straightforward that they warrant a reduction in the hours for which Plaintiff requests fees.  Plaintiff brought multiple legal claims, the litigation spanned over three years, the trial took a week, and Defendants appealed multiple issues to the Second Circuit.  There is no indication that the appellate case was based on boilerplate or cut-and-paste briefings.  *See, e.g., Gamero v. Koodo Sushi Corp.*, 328 F. Supp. 3d 165, 175-76 (S.D.N.Y. 2018) (reducing the requested fees when, *inter alia*, "the Complaint was substantively indistinct from many that have been filed by [the attorney's] firm with this Court"). Thus, the reasonableness of the time expended by Plaintiff's attorneys will not be assessed on the basis of the issues' complexity alone.  *See Pappas v. Watson Wyatt & Co.*, No. 4-CV-304 (EBB), 2008 WL 45385, at *6 (D. Conn. Jan. 2, 2008).  ("Even if this case was not exceedingly complex, the Court is

aware that the nature of the case required the Plaintiff's attorneys to perform a considerable amount of work before, during and following the trial.")

### 2.   Whether Time Billed by Bergstein and Mesidor Was Excessive or Duplicative

#### a.   *Time Billed Just by Bergstein*

Bergstein spent 87.50 hours working on Plaintiff's opposition to Defendants' appeal.  This includes time spent reviewing Defendants' briefing, drafting Plaintiff's opposition brief, and helping Mesidor prepare for oral argument.  (Bergstein Appellate Aff. Ex. 2, Dkt. 115-2.)  Defendants specifically flag eight of Bergstein's entries, which total 25.40 hours, as being "excessive on their face" because they "represent[ ] 25 minutes per page of a 60-page brief for editing," and they "include[ ] administrative expenses such as uploading the brief for filing which is not a recoverable fee item."[7] (Opp., Dkt. 121 at 6-7.)

Plaintiff argues that the time Bergstein spent drafting the brief was reasonable because the "sixty-page appellate brief [ ] cover[ed] a variety of complex issues," and Bergstein had to perform a careful "cite-check[ ] to ensure the brief [was] properly annotated to the extensive joint appendix." (Reply, Dkt. 120 at 3.)

Bergstein billed 7.10 hours to "Edit brief" on April 19, 2019, 0.75 hours to "Review Mesidor edits" on June 4, 2019, 1.20 hours to "Review Mesidor edits and make final edits to brief" on June 5, 2019, 2.40 hours to "Review Mesidor edits and edit brief down to 14,000" on June 6, 2019, and 3.75 hours to "Final edits" on June 7, 2019.  (Dkt. 121 at 6 (citing Dkt. 115-2).)  Given that Plaintiff's brief was sixty pages and covered many of the issues raised over the course of a four-year litigation, devoting 15.2 hours to editing the brief and reviewing the edits of another attorney is not unreasonable.

---

[7] Defendants also state that Plaintiff should not be able to recover fees for three of Bergstein's entries because they relate to "issues on which the plaintiff did not prevail."  (Dkt. 121 at 6.)  This argument will be addressed below.

On June 13, 2019, Bergstein billed 5.10 hours to "Edit brief by hand and check factual citations." (*Id.* (citing Dkt. 115-2).)  Although "[i]t is not unreasonable for an attorney filing a motion to be involved in preparing the substance" of a brief, "including . . . cite-checking the finished brief," *Canada Dry Del. Valley Bottling Co. v. Hornell Brewing Co.*, No. 11-CV-4308 (PGG), 2013 WL 6171660, at *6 (S.D.N.Y. Nov. 25, 2013), it is unreasonable for the partner with the highest hourly rate to perform this task.  *See Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS)(AKT), 2020 WL 2771008, at *13 (E.D.N.Y. May 4, 2020), *R&R adopted*, 2020 WL 2769266 (E.D.N.Y. May 28, 2020) (finding that "a reduction in fees" is "warrant[ed]" when a senior attorney conducted work "that could have been handled by an associate under his supervision" (citations omitted)).  However, it is not possible to fully evaluate the reasonableness of this time entry because Bergstein "block billed" the time he spent cite checking with the time he spent editing the appellate brief.  *See id.* at *14 (explaining that block billing "renders it difficult to determine whether, and/or the extent to which, the work done by the attorneys is duplicative or unnecessary" (quotation, citation, and alteration omitted)).

Defendants flag two further time entries as "excessive": 3.00 hours billed to "Convert hand-written edits to computer, given appellate brief for filing" on June 13, 2019; and 2.10 hours to "Prepare brief for filing, revise table of contents and authorities, upload to ECF" on June 14, 2019.  (Dkt. 121 at 6-7 (citing Dkt. 115-2).)  These tasks should have been completed by a paralegal, not an attorney. *See Callari*, 2020 WL 2771008, at *12 (explaining that tasks like "review[ing] electronic orders and case management orders, [and] fil[ing] documents on ECF . . . should have been conducted by a paralegal").

In addition to the entries cited by Defendants, the following entries are also unreasonable as they bill for tasks that also should have been performed by a less experienced attorney or a paralegal:

| Date | Narrative | Hours |
|------|-----------|-------|
| March 20, 2019 | Review and download Defendant's Jt Appx | 0.4 |
| March 24, 2019 | Add Jt Appendix (JA) page references to P's brief in opposition to D's appeal (using P's motion for summary judgment brief as starting point for appellate brief) | 1.75 |
| April 1, 2019 | Input JA references into WordPerfect version of brief for appeal | 0.9 |
| April 8, 2019 | Complete JA record citations in appellate brief | 1 |

(Dkt. 115-2.)  *See Singh v. Zoria Housing LLC*, No. 16-CV-2901 (SJ)(RER), 2017 WL 6947717, at *3

(E.D.N.Y. Nov. 17, 2017), *R&R adopted*, 2018 WL 437492 (E.D.N.Y. Jan. 16, 2018) (reducing an

attorney's hours because, *inter alia*, "much of the work could have been completed by a paralegal").

Bergstein claims in his time log that he billed his travel time at fifty percent of his hourly rate.

(Dkt. 115-2 Oct. 28, 2019, Nov. 6, 2019 entries.)  However, the hours and fees submitted by Bergstein

show that he did not appropriately discount his travel time.  Accordingly, the undersigned respectfully

recommends that Bergstein's rate be reduced by half for the time he was traveling.  *See Singh*, 2017

WL 6947717, at *4 ("The Court notes that travel costs are typically compensated at 50% the attorney's

hourly rate.").

In connection with drafting the Reply, Plaintiff requested an additional $5,220.00 in fees,

representing 11.60 hours of work performed by Bergstein.  (Dkt. 120 at 1; Bergstein Appellate Reply

Aff. Ex. 1, Dkt. 118-1.)  The fees sought for the Reply are excessive.  Some of the work—such as

drafting the Bergstein Appellate Reply Affirmation and Mesidor Appellate Reply Declaration and

preparing the Reply's tables of contents and authorities (Dkt. 118-1, Sept. 8, 2020 entries)—should

have been performed by a less experienced attorney or paralegal.  *See Lora v. J.V. Car Wash, Ltd.*, No.

11-CV-9010 (LLS)(AJP), 2015 WL 7302755, at *3 (S.D.N.Y. Nov. 18, 2015) (adopting the magistrate

judge's recommendation to reduce counsel's fees by ten percent to account for, *inter alia*, "work that

should have been billed at a lower associate or paralegal rate" (quotation and citation omitted)).

### b.   Time Billed Just by Mesidor

Defendants argue that the time submitted by Mesidor "is patently excessive, particularly for an attorney familiar with the case as the trial attorney and familiar with the issues from her work on the summary judgment motion."[8]  (Opp., Dkt. 121 at 8.)  They contend that certain of Mesidor's entries are "[v]ague" and "do not sufficiently demonstrate what counsel did to warrant recovery," some entries are for "administrative task[s] that [are] not recoverable on a fee application," and other entries are for work on the Initial Fees Motion and, therefore, not recoverable as part of the instant motion.  (Id. at 8.)  Furthermore, according to Defendants, the 34.6 hours that Mesidor spent "prepar[ing] for an oral argument that was scheduled for only 12 minutes" was excessive because "the issues were neither complex, nor novel and were familiar to counsel."  (Id. at 9.)

Plaintiff contends that the time Mesidor spent on the appeal was reasonable because the "appeal was complex," involving "numerous issues . . . , including evidentiary questions, challenges to liability and the damages awards (including punitive damages), and challenges to the jury instructions." (Reply, Dkt. 120 at 5.)  Mesidor's "prepar[ation] for oral argument, including a moot court . . . was [time] well spent" as "[t]he Second Circuit judges are active questioners, and counsel cannot afford to approach this proceeding without full preparation."  (Id.)

Certain of Mesidor's billing entries are insufficient because they are vague.  For example, the time entries for December 24, 2018, April 29, 2019, and May 21, 2019 are "Gave client an update," "MM reviewing brief on this," and "Update IC on status," respectively.  (Dkt. 117-2 at 21.)  Entries such as these warrant a reduction in Plaintiff's requested fees because the ambiguity of the narratives prevents an accurate assessment of the reasonableness of the time spent by the attorneys.  See Mister Softee, Inc. v. Konstantakakos, No. 15-CV-4770 (SJ)(SMG), 2016 WL 11445964, at *6 (E.D.N.Y. June

---

[8] Plaintiff and Defendants state that Mesidor billed 74.10 hours, but the total number of hours amounts to 74.20 hours.  (Dkt. 120 at 5; Dkt. 121 at 8.)

27, 2016), *R&R adopted*, 2016 WL 4250314 (E.D.N.Y. Aug. 11, 2016) ("Where time entries are vague, duplicative, or otherwise inadequate, a court may make an 'across-the-board reduction, or percentage cut, in the amount of hours.'" (quoting *T.S. Haulers, Inc. v. Cardinale*, No. 9-CV-0451 (SJF)(ARL), 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011))).  Other entries are for administrative tasks that should have been performed by a paralegal and not a partner (*see, e.g.*, Dkt. 117-2 at 21-22, Jan. 2, 2019 July 22, 2019, Oct. 8, 2019 entries) and similarly warrant a reduction in the fees sought.  *See Singh*, 2017 WL 6947717, at *3.

Further, the undersigned finds that the following five entries should have been included with the Initial Fees Motion and not the Appellate Fees Motion.  Based on the dates provided, the first four entries pertain to the Initial Fees Motion, which was filed on January 4, 2019.  (Dkt. 95.)  The fifth entry appears to refer to review of Defendants' motion (filed on January 24, 2019) to reconsider the Court's January 17, 2019 order awarding Plaintiff the fees he sought.  (Dkts. 101-03.)

| Date | Narrative | Hours |
|---|---|---|
| December 27, 2018 | Review of affidavits of other cases for attorneys fee motion | 0.5 |
| December 28, 2019 | Research on attorneys fees motion and prevailing rate in EDNY | 3.2 |
| January 4, 2019 | Review and revise attorney declaration and attorneys fees brief | 1.5 |
| January 4, 2019 | read and responded to CC email w/ revisions to attorneys fees motion. | 0.1 |
| January 25, 2019 | review of Defendants' motion for reconsideration. | 1.9 |

Because these entries do not relate to the appeal, the undersigned respectfully recommends that these five entries be excluded from the Appellate Fees Motion.

Finally, on November 5, 2019, Mesidor block billed her travel time with her time spent preparing for the appeal.  (Dkt. 117-2 at 22, Nov. 5, 2019 entry.)  The undersigned recommends a twenty five percent reduction in Mesidor's hourly rate for this time.  (*See* Dkt. 122 at 13.)

### c.   *Whether Bergstein's and Mesidor's Time Spent on the Appeal was Duplicative*

Defendants argue that the fees submitted by Bergstein and Mesidor are duplicative in two respects.  First, they contend that "Bergstein's billing for assisting Ms. Mesidor was unnecessary and duplicative of her work" and that Bergstein's time "traveling to the oral argument and sitting in the courtroom did not contribute to the outcome and should be disallowed in its entirely [sic]."  (Opp., Dkt. 121 at 7.)  Second, "there is a duplication of work by Mr[.] Bergstein and Ms. Mesidor in connection with" the Appellate Fees Motion because "Bergstein has billed for reviewing Ms. Mesidor's time sheets and for preparing her declaration, which is substantially similar to the declaration she submitted in connection with the fee application for pretrial and trial work."  (*Id.* at 7-8.) Defendants specifically flag three of Bergstein's entries relating to the Mesidor Appellate Declaration, totaling 2.90 hours, that "should be excluded in their entirety" because they are "duplicative and unnecessary expenditures of time."  (*Id.* at 8.)

In response, Plaintiff contends that the time Bergstein spent preparing for and attending the oral argument is compensable because "[l]awyering is often a collaborative effort" and the Second Circuit "carefully scrutinizes plaintiff's verdicts and deliberates carefully following argument."  (Reply, Dkt. 120 at 4.)  The time Bergstein spent preparing for the oral argument "included analyzing and summarizing Defendant's [sic] 28-page reply brief" and "spen[ding] 8.2 hours drafting a five-page, single-spaced memo for Mesidor's review in advance of argument."  (*Id.* (citation omitted).)  Further, "Bergstein's time attending oral argument[ ] was also time well-spent" because "Bergstein wrote the brief," he "discussed the case that morning [with Mesidor] at the courthouse," and, during the argument itself, Bergstein "provide[d] on-the-spot feedback."  (*Id.* at 4-5.)

There is no per se rule against having multiple attorneys working on the same appeal, even when the issues on that appeal are not complicated.  *See Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 32 (N.D.N.Y. 2015) ("find[ing] that some of the use of multiple attorneys" on the appeal "was

appropriate" even though "the issues on appeal in th[e] case were not particularly complex"). It may also be appropriate to have more than one attorney present at the oral argument. *See Pappas*, 2008 WL 45385, at *6 (explaining, in the context of a civil rights case, "that it is common practice for a lawyer to bring along a colleague to assist at a deposition or at a court proceeding"). Here, Bergstein and Mesidor appropriately split the work on the appeal: Bergstein was primarily responsible for drafting the briefs, while Mesidor was primarily responsible for the oral argument. (*See* Dkts. 115-2, 117-2.) Given this division of responsibilities, it was not improper for Bergstein to help Mesidor prepare for the appeal and be present at it. Accordingly, the undersigned rejects Defendants' argument that the time Bergstein billed for traveling to and attending the oral argument "should be disallowed in its entirety." (Dkt. 121 at 7.)

However, a review of counsel's records indicates that some of the hours billed for work performed are excessive. *See Osterweil*, 92 F. Supp. 3d at 32 (reviewing the attorneys' billing entries for "redundancies"). For example, after drafting her argument outline, preparing for the moot, and participating in the moot, Mesidor spent a further 25 hours preparing for the argument. (Mesidor Appellate Decl. Ex. 2 at 22, Nov. 1, 2019, Nov. 2, 2019, Nov. 3, 2019, Nov. 5, 2019 entries.) This is excessive. *See Osterweil*, 92 F. Supp. 3d at 35 ("The courts in this circuit have found as few as twenty-eight hours spent in preparation for oral argument before the Second Circuit to be excessive."). Similarly, the 8.2 hours that Bergstein spent drafting a memo summarizing two briefs that he wrote is also excessive. (Bergstein Appellate Aff. Ex. 2, Dkt. 115-2 at 1.) As an alternative, this work "could have been conducted by a less experienced associate billing at a significantly lower rate." *Chavez v. MCS Claim Servs., Inc.*, No. 15-CV-3160 (JMA)(AKT), 2016 WL 1171586, at *5 (E.D.N.Y. Mar. 23, 2016). Further, Mesidor billed time for work relating to the oral argument that should not have been done by a senior attorney. For example, on September 23, 2019, Mesidor "emailed the mooting panel confirming 10/28/19 at 2pm as the time to be mooted." (Dkt. 117-2 at 22.) Similarly, on October 8,

2019, she sent the joint appendix "to group of mooters." (*Id.*)  *See Lora*, 2015 WL 7302755, at *3.  The fees sought by Plaintiff should therefore be reduced.

Finally, while the time Bergstein spent on the Mesidor Appellate Declaration is not to be excluded in its entirety, that document should have been drafted by a less experienced and, therefore, less expensive, attorney.  *See id.*

### 3.    Whether Time Billed by Stevens, Housos, and Chan Was Excessive

Defendants argue that the fees requested by Stevens and Housos should be discounted because the work they performed, including their work during the oral argument moot, was duplicative of work done by other attorneys, and the narratives they submitted are vague.  (Opp., Dkt. 121 at 9-10.)  Defendants also criticize the 0.50 hours Stevens billed on June 4, 2020 "for 'discussing' the case with Ms. Mesidor, although that was only one day before the decision issued and long after the case had been briefed and argued."  (*Id.* at 9.)  Further, Defendants argue that the time billed by Chan "should be discounted in its entirety" because she performed an administrative task.  (*Id.* at 10.)

Plaintiff states that Stevens and Housos "observ[ed] the moot court and provid[ed] post-moot court feedback during the discussion with the other mooters."  (Reply, Dkt. 120 at 7.)  Plaintiff does not provide any further information about the work performed by Chan.  (*See generally id.*)

Contrary to Defendants' argument, the time submitted by the three associates should not be discounted entirely.  It is reasonable for an attorney to email the client to provide him with an update on the case's status and, at the same time, inform the client of the date of the oral argument.  (Mesidor Appellate Decl. Ex. 2, Dkt. 117-2 at 4, Oct. 9, 2019 entry.)  It is also reasonable that Stevens and Housos observed and gave feedback on the moot.  (*Id.* at 12, 31, Oct. 28, 2019 entries.)

As for the time Stevens billed for "discuss[ing the] case with" Mesidor on June 4, 2020 (Dkt. 117-2 at 31), this could also be a justified use of attorney time.  However, the lack of specificity in the description prevents a proper evaluation of the reasonableness of this billing entry.  Indeed, as

Defendants correctly point out, many of the narratives submitted by Stevens and Housos are impermissibly vague. (*See, e.g.*, *id.* at 12, Sept. 23, 2019, Oct. 25, 2019 entries; *id.* at 31, Jan. 11, 2019, Jan. 14, 2019 entries.) *See Pyatt v. Jean*, No. 4-CV-3098 (TCP)(AKT), 2010 WL 3322501, at *4 (E.DN.Y. Aug. 17, 2010) (stating that "the Court did have some issues properly evaluating the requested fees" due, in part, to "certain vague entries" (footnote omitted)).

### 4.   <u>Whether Time Billed by the Paralegals Was Excessive</u>

Although Defendants argue that "[t]he paralegal time should be substantially reduced," the only justification Defendants provide is that Nandlal billed "in increments of .10 and .20" for "reviewing emails from the Second Circuit scheduling the oral argument and filing them electronically . . . which is clearly excessive." (Opp., Dkt. 121 at 10.)  Plaintiff does not respond to this argument. (*See generally* Reply, Dkt. 120.)

The entries for which Nandlal billed in increments of either 0.10 or 0.20 are for the most part reasonable. (*See* Mesidor Appellate Decl. Ex. 2, Dkt. 117-2 at 25.)  For example, it is not unreasonable for a paralegal to spend twenty minutes accessing ECF to download a brief and then save it to the firm's filing system. (*See id.*, July 16, 2019 entry.)  However, some of the entries are too vague to permit a review of the reasonableness of Nandlal's task and the amount of time he spent on it. (*See, e.g.*, *id.*, April 29, 2019 entry ("Discussed with IM, IC and JMF), June 18, 2019 entry ("Review ecf bounce email from 2nd cir. regarding oral argument").)  *See Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 313 (S.D.N.Y. 2009) (holding that the vagueness of certain billing entries warranted a reduction in the fees sought because "some specificity is required in time entries to enable the court to determine whether a reasonable amount of time was spent on each activity, and to determine whether the particular activity is compensable").

The remainder of the paralegal time submitted by Plaintiff for reimbursement is reasonable. *See Torres v. City of New York*, No. 18-CV-3644 (LGS)(KHP), 2020 WL 2520665, at *6 (S.D.N.Y. May

18, 2020) (holding that "calendar[ing] upcoming dates [ ] should have been performed by a secretary or paralegal" (quotation omitted)); *Cocuzza v. Rockland Cty*, No. 17-CV-8217 (KMK)(PED), 2019 WL 6498915, at *7 (S.D.N.Y. Nov. 7, 2019), *R&R adopted*, 2019 WL 6498092 (S.D.N.Y. Dec. 2, 2019) (finding that sending emails that "did not consist of any substantive discussions" was a paralegal task).

**5.    Reductions Based on Vague and Excessive Billing**

As set forth above, a full evaluation of the reasonableness of all of the time submitted by Plaintiff's counsel was not possible because: (1) Bergstein block billed a limited portion of his time; and (2) many of the billing entries were too vague to permit review.  Of the time that could be reviewed, many of the entries were unreasonable because: (1) attorneys, including partners and associates, performed tasks that should have been performed by paralegals; (2) partners performed tasks that should have been performed by less experienced attorneys; and (3) the time spent by Bergstein and Mesidor preparing for the oral argument was excessive.

Given the length of the Appellate Fees Motion, the undersigned concludes that an "across-the-board percentage cut[ ] in hours [is] a practical means of trimming fat from [Plaintiff's] fee application."  *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) (quotation and citation omitted).

Accordingly, the undersigned respectfully recommends that Plaintiff's fees request be reduced by fifteen percent to account for the vague and excessive billing.  *See Crews v. Cty. of Nassau*, No. 6-CV-2610 (JFB)(GRB), 2019 WL 6894469, at *11-12 (E.D.N.Y. Dec. 18, 2019) ("conclud[ing in a civil rights case] that a 20% percent [sic] across-the-board reduction to [counsel's] hours is warranted" because of excessive, redundant, and vague hours)*; S.M. v. Evans-Brant Cent. Sch. Dist.*, Nos. 9-CV-686S, 9-CV-922S, 2013 WL 3947105, at *11 (W.D.N.Y. July 31, 2013) (finding that "an across-the-board reduction of 20% is appropriate for all hours billed" "[t]o correct for [ ] deficiencies," including duplicative and excessive billing); *Cent. N.Y. Laborers' Health & Welfare, Pensions, Annuity & Training*

*Funds*, No. 4-CV-509 (GTS)(GJD), 2011 WL 167236, at *3 (N.D.N.Y. Jan. 19, 2011) (reducing the

fees requested by "twenty percent . . . to account for the excessive and/or vague time entries"); *Ass'n*

*of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG*, No. 9-CV-

3600 (SWK), 2005 WL 3099592, at *7 (S.D.N.Y. Nov. 17, 2005) (finding that reducing the requested

fees by twenty five percent "better reflect[ed] the hours reasonably expended on th[e] matter" because

of "instances of block billing, vagueness, and excess" in the billing); *see also Ritchie v. Gano*, 756 F. Supp.

2d 581, 584 (S.D.N.Y. 2010) (reducing the fees requested "by forty percent" because "the vagueness

of many of the entries" prevented the court from determining whether the work the attorney

performed was "wrong[ ] or excessive[ ]" (footnotes omitted)).

## II.     Plaintiff's Success on Appeal

Defendants argue that Plaintiff's "lack of success" on "major issues warrants a percentage

reduction of the lodestar figure." (Opp., Dkt. 121 at 11.) Plaintiff "suffered a significant loss in his

effort to preserve the compensatory damage award, which was reduced on remittitur from $2,160,000

to $250,000," partly due to "[t]he dismissal of the § 1981 claim." (*Id.*) "Plaintiff was also unsuccessful

on [D]efendants' challenge to the award of attorneys' fees." (*Id.*)

Plaintiff argues that in reducing the verdict, the appeals court "noted that, under the three-tier

damages model that courts apply in the Second Circuit, $250,000 falls within the 'significant' category

for emotional distress damages" and that this reduction was still "a significant win, as Defendants had

urged the Court of Appeals to reduce the award to the 'garden variety' level, ranging from $50,000 to

$125,000." (Reply, Dkt. 120 at 8-9.) Moreover, "losing the Section 1981 issue was not a setback for

Plaintiff" because "the Court of Appeals reduced the pain and suffering award to $250,000, which is

below the $300,000 Title VII cap," noting "that Bergstein only expended 2.10 hours on the Section

1981 issue" during the appeal. (*Id.* at 9.) Similarly, Plaintiff states that "counsel only expended [0.75]

hours on that issue on appeal" and that the "loss [of this issue] is not enough to reduce the overall

appellate fees." (*Id.* at 10.)

"Once civil rights litigation materially alters the legal relationship between the parties, 'the degree of the plaintiff's overall success goes to the reasonableness' of a fee award . . . ." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989)). "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Id.* (quoting *Hensley*, 461 U.S. at 436). The degree of a party's success on appeal also impacts the fees that the party may recover for that appeal.

For example, in *Cush-Crawford*, the plaintiff sued the defendant alleging "sexual harassment-hostile work environment; *quid pro quo* sexual harassment; and retaliation in violation of Title VII." 234 F. Supp. 2d at 209. The jury returned a verdict in the plaintiff's favor on the sexual harassment-hostile work environment claim, awarding her zero dollars in actual damages and $100,000 in punitive damages. The defendant appealed the judgment and the plaintiff cross-appealed the failure to award actual damages. The Second Circuit affirmed the judgment in its entirety, and the plaintiff moved for attorneys' fees. *See id.* at 208-09. The court found that the plaintiff was a prevailing party overall, because "the Second Circuit affirmed the $100,000 punitive damage award." *Id.* at 212. However, the plaintiff "did not prevail on her cross-appeal for a new trial seeking actual damages" because the plaintiff's "claim was moot [as] Title VII caps damages at $100,000 in cases of employers with more than 100 and less than 201 employees, as in this case, and the $100,000 punitive damages award was affirmed." *Id.* (citation omitted). After calculating the reasonable attorney fee and finding that the time spent by the plaintiff's counsel was "reasonable and not excessive," *id.*, the court "reduce[d] the lodestar figure by ten percent" "[b]ecause the plaintiff was unsuccessful in her cross-appeal." *Id.* at 213.

It is uncontested that Plaintiff was the prevailing party overall before the Second Circuit. However, as set forth above, Defendants succeeded on certain of the grounds on which they

challenged the Judgment.  The Second Circuit found that the Court erred in not dismissing Plaintiff's § 1981 claim asserted against the Port Authority because that entity is a municipality and, pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), a § 1981 claim against a municipality can be sustained only when the alleged constitutional deprivation was part of a policy or custom of the municipality.  (Dkt. 105 at 3-5.)   The Second Circuit also rejected Plaintiff's contention that his emotional distress damages fall into the "egregious" category, finding instead that they were "significant" and concluding that his "evidence falls far short of the type of shocking, prolonged discriminatory conduct and/or long-term emotional harm that are part and parcel of the larger damage awards that can be sustained for egregious cases."  (*Id.* at 15, 17.)  Finding that "the jury's $2,160,000 award for emotional distress damages far surpasse[d] the upper limit of the reasonable range and shocks the judicial conscience," the appeals court "grant[ed] a new trial as to [Plaintiff's] emotional distress damages unless he accepts a remittitur of the award to $250,000."  (*Id.* at 18 (quotation, citation, and alteration omitted).)  Finally, the Second Circuit also "remand[ed] the issue [of the Initial Fees Motion] to the district court to allow it to fully consider [D]efendants' opposition and to provide the grounds for its discretionary decision in connection with the fees motion."  (*Id.* at 23.)

Thus, Plaintiff was unsuccessful on meaningful portions of the appeal despite Plaintiff's attempts to minimize those losses.  The result of the Second Circuit's decision was a reduction of his damages by approximately 88 percent.

Nonetheless, the Court should not mechanically apply this percentage reduction in damages, or the loss of certain issues on appeal, to a commensurate reduction in the attorneys' fees.  The legal issues were interrelated, and the work necessary to defend all the claims and damages on appeal cannot be so easily separated.  *See Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) ("So long as the plaintiff's unsuccessful claims are not 'wholly unrelated' to the plaintiff's successful claims, hours spent on the unsuccessful claims need not be excluded from the lodestar amount.").

Accordingly, the undersigned respectfully recommends that Plaintiff's requested fees be reduced by a further ten percent on the basis of Plaintiff's lack of success on appeal.  *See Crews*, 2019 WL 6894469, at *11 (finding, in a civil rights case, a further "across-the-board 10% reduction in the number of hours [ ] appropriate because of the additional legal work performed litigating the unsuccessful claims"); *Skyline Steel, LLC v. Pilepro, LLC*, No. 13-CV-8171 (JMF), 2015 WL 3739276, at *7 (S.D.N.Y. June 15, 2015) (holding that "a 25 percent reduction is appropriate" when, *inter alia*, the plaintiff did not prevail on all of the issues and "some of the billing entries reflect time spent on both compensable and non-compensable tasks"); *DeMarco v. Ben Krupisnki Gen. Contractor, Inc.*, No. 12-CV-573 (SJF)(ARL), 2014 WL 3696020, at *10 (E.D.N.Y. July 22, 2014) ("reduc[ing] across-the-board by thirty percent" counsel's hours because of excessive billing entries and work on an unsuccessful claim and motion).  In total, the undersigned respectfully recommends that the fees sought by Plaintiff be reduced by twenty-five percent.

## III.    Calculating the Recommended Fee Award

The chart below sets forth the fees for Plaintiff's attorneys and paralegals calculated using the reasonable hourly rates without any reduction in hours, resulting in a total of $83,736.25.

| Biller | Rate | Non-Travel Time | Rate x Non-Travel Time | Travel Time | 50% Rate x Travel Time | Block Billed Travel | 75% Rate x Block Billed Travel |
|---|---|---|---|---|---|---|---|
| Bergstein | $450 | 95.6 | $43,020 | 3.5 | $787.50 | | |
| Chan | $150 | 0.5 | $75 | | | | |
| Guaranda | $70 | 0.7 | $49 | | | | |
| Hernandez | $80 | 1.3 | $104 | | | | |
| Housos | $150 | 27.4 | $4,110 | | | | |
| Isaac | $70 | 0.1 | $7 | | | | |
| Mesidor | $450 | 71.7 | $32,265 | | | 2.5 | $843.75 |
| Nandlal | $70 | 2.5 | $175 | | | | |
| Stevens | $250 | 9.2 | $2,300 | | | | |
| **Totals** | | | **$82,105** | | **$787.50** | | **$843.75** |
| *Grand Total* | | | | | *$83,736.25* | | |

Reducing the total fee amount by fifteen percent for the insufficient and excessive billing entries and ten percent based on Plaintiff's lack of success on appeal (a total of twenty-five percent) results in a recommended reasonable fee amount of $62,802.19.

<strong><u>CONCLUSION</u></strong>

Based on the foregoing, the undersigned respectfully recommends that the Court grant Plaintiff's motion and approve Plaintiff's request for attorneys' fees in the reduced amount of $62,802.19.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation.  *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
        November 10, 2020